66  601
70   45

STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ROBERT HENSON, PLAINTIFF IN ERROR.

Argued June 25, 1901—Decided November 15, 1901.

1. A defendant on trial for a crime, who offers himself as a witness on his own behalf, may be asked on his cross-examination whether he has been convicted of crime, for the purpose of affecting his credibility.
2. "Crime," in section 1 of the Evidence act (*Gen. Stat., p.* 1397), means any crime.
3. It is competent to ask the defendant in a criminal trial, on his cross-examination, whether he has pleaded *non vult contendere* to an indictment for petit larceny.

On error to the Mercer Oyer and Terminer.

For the plaintiff in error, *Beasley & Walker.*

For the state, *William J. Crossley,* prosecutor of the pleas.

The opinion of the court was delivered by

Van Syckel, J. The defendant, on his trial for homicide, was sworn as a witness on his own behalf.

On his cross-examination he was asked whether he had been convicted of assault and battery.

Also, whether he had pleaded guilty to a charge of atrocious assault and battery.

And, also, whether he had pleaded *non vult* to a charge of petit larceny.

To each of these questions he answered yes, under objection to their competency.

The only question involved in the case is whether it was error to require the defendant to answer these interrogatories.

Our statute of June 7th, 1779 (*Pat. L., p.* 401), provided that no person convicted of blasphemy, treason, murder, piracy, arson, rape, sodomy or any infamous crime against nature, bigamy, robbery, conspiracy, forgery or larceny above the value of $6 shall be admitted as a witness, unless first pardoned; and no person convicted of perjury or subornation of perjury shall be admitted as a witness although pardoned.

This was the positive law until it was changed by the revision of 1874.

By an act concerning evidence, passed in 1871 (*Gen. Stat., p.* 1398, § 8), it was provided that "upon the trial of any indictment of any person charged with crime, the person indicted shall be admitted to testify as a witness upon such trial, if he shall offer himself as a witness in his own behalf."

Section 5 of the said Evidence act provides that the husband or wife shall be competent and compellable to give evidence in certain cases.

Section 6 makes a defendant in a Chancery suit a competent witness for or against any other defendant.

These sections were passed before 1874, as will appear by reference to *Gen. Stat., p.* 1398.

Our statute prior to 1874 provided, as it now does, that a person convicted of perjury shall not be admitted as a witness even after pardon.

None of the crimes specified in the Paterson act could, before 1874, have been proven to affect the credibility of a witness; such proof was an absolute disqualification. If a defendant, on trial for a criminal charge, was admitted as a witness on his own behalf, he would have stood before the jury unimpeached, and unimpeachable, by reason of being previously convicted of crime, and would have been entitled to the credit of any other witness.

The question first considered will be whether, before 1874, a person on trial for homicide could have been excluded from testifying on his own behalf, if he had previously been convicted of perjury or other crime specified in the Paterson act.

Section 8, providing that the defendant shall be admitted, is no stronger than section 5, which says that the husband is not only competent but compellable to testify; nor than section 6, which declares that the person therein named shall be competent to testify.

If competent he must be admitted, and it would be error to exclude him.

These sections mean only that the husband, because of the marital relation, or the defendant in chancery because of being co-defendant, or the defendant in an indictment because of being such defendant, shall not be incompetent to testify.

It cannot be that the legislature intended that these persons, who before were wholly disqualified to testify, should not only have such disqualification removed, but that they should be the only persons who, when offered as witnesses, could not be rendered incompetent by showing that they had been guilty of an offence which rendered all other witnesses incompetent.

And although the statute, before 1874, provided that no person convicted of perjury should be a competent witness even after pardon, the defendant on trial for crime would have been a competent witness before pardon.

That such an exceptional favor was intended to be granted to a person on trial for a high crime cannot be conceded in the absence of language which left no room for doubt.

The statute declaring that certain specified persons shall not be admitted as witnesses is equally positive and express with the legislative declaration that a person on trial for crime shall be admitted as a witness on his own behalf.

The settled rule of construction requires that effect shall be

given to all the statutes on the same subject, and they can be harmonized only by the interpretation above adopted.

The fact of a prisoner being on trial did not exclude him from testifying in his own behalf, as it did prior to the passage of the eighth section, but by section 8 one disability was removed, and he was placed on the same plane with other persons offered as witnesses and subject to the same disabilities.

But if this were not so prior to 1874, the Paterson act, as will hereafter appear, was repealed in 1874, and an independent act was passed providing that conviction of crime could be shown to affect the credit of a witness. *Gen. Stat., p.* 1397, § 1.

This is a general act, applying in its terms to all persons without exception, and it must therefore be held to include a defendant who is admitted as a witness under the aforesaid eighth section, which was passed in 1871.

By the act of 1874, above referred to (*Gen. Stat., p.* 1397, § 1), it is provided that "no person offered as a witness in any action or proceeding of a civil or criminal nature shall be excluded by reason of his having been convicted of crime, but such conviction may be shown on the cross-examination of the witness, or by the production of the record thereof, for the purpose of affecting his credit."

It is contended that this act was passed with reference to the previously existing law in order to let in as witnesses those who had been excluded by the crimes specified in the Paterson act, and that it has no relation to crimes other than those in that act enumerated.

In my judgment such a limitation of the act of 1874 is unwarranted.

The Paterson act was not repealed by force of the said first section of the act of 1874, because it was inconsistent with it, but there was an express repealer of the Paterson act in 1874. *Gen. Stat., p.* 3194, *pl.* 25, 29; *Id., p.* 3775, *pl.* 77.

The first section of the present act is an independent act,

and must be construed according to the language employed by the legislature to express its purpose in enacting it.

The language is that no person shall be excluded by reason of his having been convicted of crime, but such conviction may be shown to affect his credit.

It is the conviction of crime which is to affect credibility. The word "crime" being used without qualification, must be held to be used in its general sense to include any crime. It is not a word of doubtful meaning.

If it had been intended that those crimes only which were specified in the Paterson act could be shown for the purpose of impeaching the credit of a witness, the act of 1874 would have expressly provided that the crimes enumerated in the Paterson act should not thereafter disqualify a witness, but might be proven to affect his credibility.

A draftsman of even ordinary skill would have made the meaning of the act of 1874 indisputable by using the language above suggested.

The act of 1874 was framed by the late Chief Justice Beasley, Chief Justice Depue and Mr. Cortlandt Parker.

To hold that in the use of the word "crime" without qualification or restriction, they intended to employ it in a narrow and restricted sense, would impute to them conspicuous inaccuracy in framing this important statute.

The English judges found no small difficulty in determining precisely the crimes which rendered the perpetrator infamous and incompetent to testify. The difficulty at common law lies in the specification of those offences.

The English judges did not attempt to give an exhaustive list of such crimes, but wisely dealt with each case as it arose. See 1 *Greenl. Evid.*, § 373, and notes.

The distinguished jurists who formulated our law were, of course, familiar with the condition which existed at common law, and it is quite clear that, to remove the uncertainty which arose in the English courts, they adopted the word "crime" in its general sense to mean every crime.

There are many crimes of great turpitude not specified in the Paterson act. Among others are counterfeiting, sheriff

aiding escape of his prisoners, embracery, bribery, compounding of crimes, extortion by judges, fraudulent voting, intentional injury to public property, obstructing railways, producing abortion and larceny under the value of $6.

Can it be reasonably concluded that by the use of the word "crime" the legislature did not intend that any of these offences should be shown to affect the credibility of a witness?

It may be that conviction of the crime of assault and battery, in many instances, would be no substantial ground for impairing credibility, but the legislature may designate the crimes, a conviction of which will affect credibility, and the courts cannot restrict or enlarge the enactment of the lawmaker, upon their view that some crimes do, and others do not, evince unreliability. The act of 1874 does not submit to the court, as a question of law, whether the crimes charged should affect credibility; it is a question for the jury, whose province alone it is to say to what extent, if any, credibility shall be affected. Proof of previous conviction of crime is not, and cannot be, offered or considered to establish the guilt of a prisoner on his trial; its only purpose and object is to affect the credit to be given to his own testimony voluntarily offered by him on his own behalf.

After most careful reflection, I am convinced that this is the true construction of the existing law, and it is supported by judicial decisions in other states, which are entitled to great consideration.

The case of *State* v. *Sauer,* 42 *Minn.* 258, is in point.

The statute in that state is "conviction of any crime;" ours is "conviction of crime;" the language in the one case is no more comprehensive than in the other.

The Minnesota court said: "The irresistible conclusion is that the legislature intended just what it said, leaving the whole matter, when evidence of crime is produced, to the good judgment of the jury."

In *Commonwealth* v. *Hall,* 4 *Allen* 305, 306, the court said: "It is suggested that, by the true construction of the statute, the crimes which may be proved to impeach a witness are only those which might formerly have been proved to exclude him.

The statute says the conviction of any crime may be shown to affect the credibility of any person testifying. This language is clear, and there is no reason to suppose that there was any intent to change the law by the general statutes."

The language used in the Massachusetts statute is "any crime."

To the like effect are the following cases: *Helm* v. *State,* 67 *Miss.* 562; *Commonwealth* v. *Ford,* 146 *Mass.* 131.

The words used in our statute are: "Convicted of crime, and such conviction may be shown on cross-examination of the witness for the purpose of affecting his credit." There being no specification or designation of the crime to which this inquiry may be directed, the accepted rules of interpretation will be disregarded if proof of the conviction of any crime is withheld from the jury.

The act permits the conviction to be shown on the cross-examination of the witness.

In *Commonwealth* v. *Lockwood,* 109 *Mass.* 323, Mr. Justice Gray correctly states the distinction between the terms "conviction" and "judgment" in this language:

"The ordinary legal meaning of conviction, when used to designate a particular stage of a prosecution triable by a jury, is the confession of the accused, in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while judgment or sentence is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained."

Our statute places the conviction in direct contrast with the record thereof.

The question was properly put to the defendant, whether he had not been convicted of crime.

The distinction between "conviction" and judgment has been very generally observed. 4 *Bl. Com.* 361; 1 *Bish. Cr. L.* 963 (*7th ed.*); *United States* v. *Gilbert,* 2 *Sumn.* 19; *People* v. *Goldstein,* 32 *Cal.* 432; *Stevens* v. *People,* 1 *Hill* 261; *United States* v. *Walkinds,* 6 *Fed. Rep.* 153; *People* v. *Adams,* 95 *Mich.* 541; *Quintard* v. *Knoedler,* 53 *Conn.* 485.

In *Roop* v. *State,* 29 *Vroom* 479, the question here involved was passed upon by our Supreme Court. The defendant in that case was a witness on his own behalf in a criminal trial. On his cross-examination he was asked whether he had been convicted of keeping a disorderly house, which is not one of the crimes mentioned in the Paterson act. In the opinion in that case, delivered by our present Chancellor Magie, and concurred in by the late Chief Justice Beasley, it was held that the question was competent for the purpose of affecting his credit, under section 1 of the act concerning evidence. *Gen. Stat., p.* 1397.

The Paterson act was a restraining statute in its effect on the common law, and if its repeal revived the common law the uncertainty which existed under the common law would prevail here, and crimes not specified in that act would totally disqualify a witness. At common law, larceny under the value of $6 rendered a witness incompetent. 1 *Greenl. Evid.,* § 373, and notes.

Therefore, while the crime of grand larceny would only affect the credibility of a witness, the crime of petit larceny would disqualify him.

The question remaining to be considered is whether it was competent to ask the defendant whether he had pleaded *non vult contendere* to an indictment for petit larceny.

The plea of *nolo contendere* has the same effect as a plea of guilty, so far as regards the proceedings on the indictment.

It is a confession only for the purposes of the criminal prosecution, and does not bind the defendant in a civil suit for the same wrong. *Whart. Cr. Pl. & Pr.,* § 418; *Bish. Cr. Pro.,* § 802.

A judgment founded on a plea of guilty, or of *nolo contendere,* is in like manner conclusive in a subsequent criminal prosecution, but in civil suits it is not such an admission of guilt as to be evidence against the party pleading it. 2 *Whart. Ev.,* § 783.

In *Commonwealth* v. *Horton,* 9 *Pick.* 206, it is held that a plea of *nolo contendere* to an indictment has the same effect

in the criminal trial itself as a plea of guilty, and sentence thereupon follows.

In our Supreme Court, in a case decided in 1884, and not since called in question, it is held that a plea of *nolo contendere* is equivalent to a plea of guilty, the only difference in the significance of the two pleas being in the force each has upon a collateral proceeding. *Peacock* v. *Hudson Sessions,* 17 *Vroom* 112.

The books agree that the only advantage the defendant obtained by this plea is that he is not estopped to set up his innocence in an action based upon the same facts. 2 *Hawk. P. C.* 31, § 3; 1 *Chit. Crim. L.* \*431.

The defendant cannot plead this plea as of right, he must obtain the consent of the court to do so, and the fact that he has pleaded *non vult* presupposes that he had obtained leave of the court to enter such plea.

The question whether the defendant had pleaded *non vult* was equally competent with the question whether he had pleaded guilty.

I have found no error in the proceedings of the trial court and am of the opinion that the judgment should be affirmed.

COLLINS, J. (dissenting). Robert Henson was, at the January Term, 1901, of the Mercer Oyer, convicted of the murder, in the first degree, on November 17th, 1900, of Mary Elizabeth Van Lieu. His writ of error is brought and returned under sections 134 and 136 of the revised Criminal Procedure act. *Pamph. L.* 1898, *p.* 866. No ground of reversal appears except as follows: At the trial the accused, having offered himself as a witness, under section 57 of said act, was admitted to testify in his defence. Upon cross-examination, notwithstanding objection of incompetency, the prosecutor of the pleas was allowed to ask and receive answers to questions so framed as to elicit admissions that the accused had, in the Mercer Sessions, pleaded guilty, in 1885, to a charge of assault and battery and to a charge of atrocious assault and battery; in 1898, to a charge of assault and battery, and, at

the May Term, 1900, to a charge of atrocious assault and battery, and, in 1892, had pleaded *non vult* to a charge of petit larceny. Error has been duly assigned to exceptions sealed upon the allowance of these questions.

As affirmative evidence for the state proof of the commission, by the accused, or his conviction of the offences embraced in the challenged questions, would have been illegal. *Bullock* v. *State,* 36 *Vroom* 557, and the cases there cited. Their allowance is sought to be justified on the ground that the affirmative answers were legitimate proof to discredit the accused as a witness.

In view of what was said, *obiter,* in the Supreme Court, in *Roop* v. *State,* 29 *Vroom* 479, it was the part of prudence in the trial court, for the purpose of affecting the credit of the accused as a witness, to admit proof of his conviction of any criminal offence; but, in this court, the question is open, and I am satisfied that no more for that purpose than for any other was proof of conviction of assault and battery legally permissible.

At the common law conviction of some offences worked incompetency to testify, because the convict was considered infamous. Pardon restored competency; but the conviction might still be proved for the purpose of affecting the credit of the witness—for a pardon "makes not the man always an honest man." 2 *Hale P. C.* 278; *King* v. *Crosby,* 5 *Mod.* 15, and the cases collected by Mr. Justice Doe in *Curtis* v. *Cochran,* 50 *N. H.* 242, 244. At first it was the infamous punishment that was supposed to disqualify the witness, but later it was seen that it was the character of the crime that afforded the test. Sir John Holt said, in *King* v. *Davis,* 5 *Mod.* 75: "If a man has had an infamous judgment and has stood on the pillory for an offence which is contrary to the faith, credit and trust of mankind, as forgery is, he cannot be a witness in any cause. Hale says if he has stood on the pillory he cannot be a witness, but that is understood for an infamous judgment. But if a man be convicted for a libel, and has stood on the pillory for it, yet, perhaps, he may be a witness." In *Pendock* v. *Mackender,* 2 *Wils.* 18, it was settled that it

was the character of the crime, and not that of the punishment, that created the infamy and took away competency to testify. What crimes were infamous was never expressly declared. The usual designation of law-writers is "treason, felony and the *crimen falsi.*" The last vague appellation, borrowed from the civil law, is elastic and may cover new statutory offences, but it is clear enough, from the adjudged cases, that an element of falsehood or fraud must exist to bring a misdemeanor within its ban of infamy. 1 *Greenl. Evid.,* § 373. No negative limit was ever set, but one thing is certain—conviction of assault and battery did not disqualify a witness. That it did was never suggested in England, and in this country it has been decided that it does not. The latest case is *Smith* v. *State,* 29 *So. Rep.* 699. It has even been adjudged that conviction of assault with intent to murder will not disqualify a witness. *United States* v. *Brockius,* 3 *Wash. C. C.* 99. It would be most unreasonable to exclude a witness by reason of his conviction of assault and battery. Truthful men may be violent. Indeed, one prone to provocation is likely to be of a frank and open nature. If Washington, at the battle of Monmouth, had struck down Lee instead of angrily reproaching him, he might have incurred punishment, but his traditional reputation for veracity would not have been shaken.

In this state the exclusion of witnesses for conviction of crime was, at an early day, regulated by statute. In 1799, by the first section of "An act concerning witnesses," it was provided as follows: "No person who shall be convicted of blasphemy, treason, murder, piracy, arson, rape, sodomy or the infamous crime against nature committed with mankind or with beast, polygamy, robbery, conspiracy, forgery or larceny of above the value of six dollars shall in any case be admitted as a witness unless he or she be first pardoned; and no person who shall be convicted of perjury or of subornation of perjury, although pardoned for the same, shall be admitted as a witness in any case." *Pat. L., p.* 401. This act was revised in 1846, but its first section remained unchanged. *Rev. Stat., p.* 959.

It is suggested that, for the purpose of discrediting a wit-

ness, conviction of any offence might, at common law, have been given in evidence. I find no such adjudication, and the practice would have been inconsistent with the notions of the times when the common law was developing and with its general principles. If an offence was of a character to discredit a witness, it sufficed to disqualify him. If, for any reason (*e. g.*, a failure to challenge the witness or the production of his pardon), he was not excluded, then the conviction of a crime which otherwise would have disqualified him, and only of such a crime, might be given in evidence for the purpose of affecting his credit.

Whether a witness could be asked or compelled to disclose his conviction of a crime was a moot point. Judicial opinion in England shifted, and finally, under the liberal rules of cross-examination there prevailing, was settled in the affirmative; but if the assumed conviction was irrelevant to the issue, there could be no contradiction if the witness denied it. In this state the Supreme Court would not permit the interrogation. *State* v. *Bailly,* 1 *Pen.* *416.

In 1843, by 6 & 7 *Vict., c.* 85, disqualification by reason of conviction of crime was absolutely removed. Nothing was said in the act as to affecting the credit of a witness by proof of a conviction, but probably, as theretofore in case of a pardon, proof of conviction of any previously disqualifying offence remained available for that purpose. In 1854, by the twenty-fifth section of the Common Law Procedure act (17 & 18 *Vict., c.* 125), it was provided that "a witness in any cause may be questioned as to whether he has been convicted of any felony or misdemeanor, and, upon being so questioned, if he either denies the fact or refuses to answer it shall be lawful for the opposing party to prove such conviction." In 1865, by 28 & 29 *Vict., c.* 18, the same provision in substance was extended to criminal trials. It has been held that this legislation embraces irrelevant convictions. *Ward* v. *Sinfield,* 49 *L. J., C. P.* 696.

In this state, in 1855 (*Pamph. L., p.* 668), by "An act concerning evidence," the main purpose of which was to remove disqualification of witnesses by reason of interest in

the controversy, it was, among other things, provided that "the interest of a witness in the event of the action or proceeding, or his conviction of a crime, may be proved by an examination of such witness or otherwise, and his answers upon such examination may be contradicted by other evidence." This provision became the ninth section of the revised act of 1874 (*Gen. Stat., p.* 1397) and is now the seventh section of the latest revision of the statute. *Pamph. L.* 1900, *p.* 362. It is much narrower than the English act of 1854. It does not enlarge the range of provable convictions, but merely deals with methods of proof. Discrediting a witness is not the only purpose for which his conviction of a crime may be proved. Sometimes such a conviction is relevant to the issue. *State* v. *Raymond,* 24 *Vroom* 260, 265; *Bullock* v. *State,* 36 *Id.* 557. If this section permits inquiring of a witness about a former conviction for the mere purpose of discrediting him, its effect for that purpose is limited to the class of crimes proof of conviction of which, by the record, would theretofore have discredited him. In *Brown* v. *State,* 33 *Id.* 666, 694, the present Chief Justice, speaking for this court, expressed the opinion that it justifies cross-examination as to convictions of burglary and larceny, which convictions he thought were, in that case, relevant to the issue.

By the revision of 1874 our statute naming and limiting the crimes conviction of which should exclude a witness was expressly repealed. *Gen. Stat.* (*Appen. A'*), § 77. Perhaps thereby the common law was restored; but, as before stated, no precedent of exclusion of a witness by reason of his conviction of assault and battery will be found at the common law.

The state, however, resorts to another statute, viz., the *first* section of the "Act concerning evidence," as revised in 1874 (*Gen. Stat., p.* 1397), and retained in the latest revision of that act. *Pamph. L.* 1900, *p.* 362. It reads as follows: "No person offered as a witness in any action or proceeding of a civil or criminal nature shall be excluded by reason of his having been convicted of crime, but such conviction may be

shown on the cross-examination of the witness, or by the pro-
duction of the record thereof, for the purpose of affecting his
credit." It is claimed that, under this section, proof of con-
viction of *any* crime is permissible, but to my mind it is clear,
from the antithetical and substitutional character of the pro-
vision, that it extends only to such a conviction as, except
for its enactment, would have excluded the witness. No wit-
ness shall be excluded by reason of having been convicted of
crime, *but* "such conviction" (*i. e.,* such as otherwise would
exclude him) may be proved in the specified manner for the
purpose of affecting his credit. Such is the plain meaning of
the provision, and such has been the judicial exposition else-
where of statutes substantially identical therewith. *Coble* v.
*State,* 31 *Ohio St.* 100; *Bartholomew* v. *People,* 104 *Ill.* 601;
*Card* v. *Foot,* 57 *Conn.* 427. In Maine only has the diligence
of the counsel for the state discovered a judicial opinion that,
under such a substitutional statute, proof of conviction of an
offence that never disqualified may be made. In that case the
decision was put upon a declared public policy, rather than on
a sustainable construction of the statute. The other cases
cited for the state are all on provisions which, as quoted in the
reports, are, like the English act of 1854, above cited, inde-
pendent enactments, although, perhaps in some cases, em-
braced in the same statute that removed a disqualification;
and all are explicit in extent. I quote, as an example, from
the Massachusetts statute: "The conviction of any crime may
be shown to affect the credibility of any person testifying."

It is urged against the view herein expressed that if it was
the intention of our legislature to permit proof, for the pur-
pose of affecting credit, of only such convictions as had there-
tofore disqualified, they would have recited the crimes named
in the excluding act, or would have referred to that statute
as embracing the crimes contemplated, but, in view of its
repeal and the possible restoration thereby of the common law,
the course adopted was the natural and proper one. In the
absence of a clear and unequivocal expression of such a de-
sign, the members of this court who vote to reverse in the
present case are unwilling to hold that it was intended to

admit irrelevant evidence of conviction of an offence that no court had ever held discredited a witness, on the possibility that a jury might determine that in a particular case it should have that effect.

As to no witness, we think, would the provision in question have authorized proof of conviction of an offence that, under the repealed statute or at common law, would not have disqualified; but it must not be assumed that such provision extends to a defendant in a criminal cause offering himself as a witness. The right to testify was, in this state, conferred on·such defendants in 1871 (*Pamph. L., p.* 12), when the excluding statute cited was in force. Dr. Wharton gives it as his opinion that when a statute gives generally to accused persons the right to testify, such right is "arbitrary and universal," and that no exclusion is to be implied from previous statutes excluding particular classes of witnesses. *Whart. Cr. Ev.,* § 429. In New York it has been so decided. *Delamater* v. *People, 5 Lans.* 332; *Newman* v. *People, 63 Barb.* 630. I find no decision to the contrary. Statutes *in pari materia* must be construed together, and one will yield to the other, according to the discernible legislative intent. For example, the act of 1799 was not the only authority for excluding a witness convicted of perjury or subornation of perjury. For many years, under the Crimes act, conviction of either of those crimes rendered the convict "incapable of giving testimony in any of the courts of this state." *Rev. Stat., p.* 357, § 23. The revisers of 1874 retained this provision. *Gen. Stat., p..* 1052, § 17. Will it be argued that their new provision in the first section of the "Act concerning evidence" permits every such convict to testify, subject only to the discredit of the conviction? On the other hand, will the provision quoted, retained in the latest revision of the Crimes act (*Pamph. L.* 1898, *p.* 798, § 18), prevent full effect being given to the fifty-seventh section of the Criminal Procedure act, approved the same day, which provides that "upon the trial of any indictment the defendant *shall be* admitted to testify if he shall offer himself as a witness?" It may be that, under section 9 (now 7) of the "Act concerning evidence," an indicted man may be dis-

credited by proof of his conviction of perjury, but surely he may testify. It may well be argued that the substitute for disability did not embrace accused persons for the reason that they were not under disability. In *Brown* v. *State, ubi supra,* it was the accused who was cross-examined, but it is very suggestive that the learned judge who spoke for this court justified the examination by the ninth (now seventh) section of the "Act concerning evidence," ignoring the first section, although the right of indicted defendants to testify then formed (as section 8) a part of the same statute. It is noteworthy that in the revision of 1900 section 8 has been omitted from the act, because its provisions had, in the main, been made a part of the Criminal Procedure act. *Pamph. L.* 1898, *p.* 886, § 57. The care with which the British parliament, in conferring the right to testify upon accused persons by the Criminal Evidence act of 1898 (61 & 62 *Vict., c.* 36), guarded against subjecting them to proof of irrelevant convictions of crime, exemplifies sound policy. So illiberal an effect, as is claimed by the state in this case, should not be attributed to a statute which it is not clear was framed with such persons in the legislative contemplation.

In order to prevent an erroneous impression, if the matter were passed *sub silentio,* it should be stated that the proper form of interrogation, under the authority of either the first or seventh (formerly ninth) section of the "Act concerning evidence," should be of "conviction," not of "plea," or even of verdict. The only conviction that excluded a witness was one that was evidenced by judgment. 1 *Greenl. Evid.,* § 375, and cases cited. The first section of the act defines the word "conviction" by its plain implication that the conviction intended is one that may be proved by the *"record thereof."* If it be objected that the witness may not know that there is a record, the answer is that he will know whether or not there was *sentence,* and until sentence there is no conviction within the purview of the statute. In the case in hand the learned judge who presided at the trial noticed that the questions were improperly framed, and, as the counsel for the defendant did not press their objections on that ground, we may assume that,

on the pleas of guilty, there were judgments, but in no aspect of the case was it proper to admit proof of a plea of non vult, so called. A strict plea in a criminal case presents a defence. What is commonly called a plea of guilty is properly styled in our statutes a confession in open court. A defendant unwilling to confess, but unwilling also to contend against the charge, may, in cases not capital, put himself at the mercy of the court. Such submission may be accepted or he may be driven to plea or confession. If accepted, the court proceeds to sentence as if on confession, but the judgment has no collateral effect. The defendant is colloquially said to plead *non vult contendere* or *nolo contendere,* but those words are but a recital of his attitude towards the charge. It is sometimes said that a defendant cannot plead *non vult* except by leave of the court, but that only means that the court need not accept his submission. Hawkins thus states the case at the common law: "An implied confession is where a defendant, in a case not capital, doth not directly own himself guilty, but in a manner admits it by yielding to the king's mercy and desiring to submit to a small fine; in which case, if the court think fit to accept of such submission and make an entry that the defendant *posuit se in gratiam regis,* without putting him to a direct confession or plea (which in such cases seems to be left to discretion), the defendant shall not be estopped to plead not guilty to an action for the same fact, as he shall be where the entry is *quod cognovit indictamentum.*" 2 *Hawk. P. C., ch.* 31, § 3. A so-called plea of *non vult* does not imply a judgment. The submission may not, and in grave offences will not, be accepted; and when accepted, the most frequent result is a suspension of sentence. Further, I doubt very much whether a sentence on such a submission is a "conviction" within the statute *sub judice.* Upon submission the court proceeds as upon a confession, but I have found no precedent for ulterior effect. I will not concede that a sentence, imposed solely because the accused did not contend against the charge, would, at common law, or under our act of 1799, have disqualified or discredited a witness.

In my opinion the forcing of Henson to an admission that

he had pleaded *non vult* to a charge of petit larceny was erroneous.

It is urged for the state that, in view of the other evidence in the cause, the accused has not been injured by the cross-examination permitted. In cases within the indulgence of the one hundred and thirty-sixth section of the Criminal Procedure act reversal is proper only when a plaintiff in error shows that he suffered manifest wrong or injury on the trial below, but in this case no indulgence is asked. Exceptions duly sealed and due assignments of error make a case *stricti juris,* and by the very section cited, and under the decisions of this court, it is enough that the error complained of *may have* prejudiced the defence on the merits. *Ryan* v. *State,* 31 *Vroom* 552; *Bullock* v. *State,* 36 *Id.* 557. Although the ostensible purpose in proving the previous conviction of the accused of assault and battery was to discredit him as a witness, the real purpose evidently was to induce a belief that he was a person likely to commit crimes of violence. Wisely or not, our law forbids this. In *Bullock* v. *State, ubi supra,* the indictment was for murder by shooting an officer arresting on a petty charge. The prisoner claimed that the shooting was in self-defence. At the trial the accused had not only offered evidence of his character for peace, but, with other witnesses, had testified that he had never had trouble with anyone. Proof, under objection, was then made by the state that, some years before, a man, claimed to be the prisoner, had assaulted with a razor one Campbell, who testified on the subject. The prisoner denied that he had ever seen Campbell. The trial judge had doubts of the legality of this testimony and of the identity of the prisoner as the man who had assaulted Campbell, and therefore endeavored to eliminate the testimony from the case. Nevertheless its admission was held to be subsisting reversible error, because what the judge said was in his charge to the jury, instead of before the arguments of counsel, and was, perhaps, more a recommendation than a direction to disregard the testimony. The vice of the testimony was held to be that it was "calculated to impress upon the minds of the jurors a conviction of the natural propensity

of the prisoner to resort to extreme violence on slight provocation." The judgment was reversed, because, in the language of the Chief Justice, speaking for this court, "we think that, notwithstanding the charge of the judge on this subject, the evidence of Campbell may have had, and probably did have, an influence on the minds of the jury in rendering its verdict." So strictly is the rule applied in this court in capital cases.

In the case in hand the evidence, both of the alleged crime and of its perpetration, was altogether circumstantial. Charred human remains, presumably those of the woman whose murder was charged and of her infant child, were found in the ruins of their dwelling after its destruction by fire at night. The evidence tended to show that the woman had been felled with an axe outside the house, and that her body had been taken into the house, which was then set on fire. There was also evidence tending to show that the child also had been taken from the house and slain and its body cast into the flames.

It is not needful to recite the evidence pointing to the accused as guilty of these crimes. It is enough to say that, though strong, it was not demonstrative. The prisoner had been friendly with the deceased woman and her husband, who was absent during the afternoon and evening preceding the fire. No motive for the killing was discernible. That the prisoner had previously, and more than once, been guilty of atrocious assault and battery must have had weight in determining the verdict.

The judgment should be reversed, and a *venire de novo* should be awarded.

*For affirmance*—THE CHANCELLOR, DEPUE (CHIEF JUSTICE), VAN SYCKEL, FORT, BOGERT, KRUEGER, VREDENBURGH, VROOM. 8.

*For reversal*—GARRISON, COLLINS, GARRETSON, HENDRICKSON, ADAMS, VOORHEES. 6.