39 N.J. Super. 50 (1956)
120 A.2d 468
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM WALLACE PEARSON, AND ISABEL PEARSON, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1956.
Decided February 2, 1956.
*52 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Vito A. Concilio, Sussex County Prosecutor, argued the cause for the respondent.
Mr. Maurice C. Brigadier argued the cause for the appellants (Mr. Seymour Margulies, on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
The defendants, husband and wife, were convicted on both counts of an indictment which charged them with obtaining money by false pretenses in violation of N.J.S. 2A:111-1, and the misappropriation of funds paid to them for the purpose of erecting a house, contrary to N.J.S. 2A:102-10. They seek a reversal on the ground that there should have been an acquittal on their motion at the close of the State's proof. Errors in the charge of the court to the jury and in the admission and rejection of evidence are also alleged.
N.J.S. 2A:111-1 provides:
"Any person who, knowingly or designedly, with intent to cheat or defraud any other person, obtains any money, * * * by means of false promises, statements, representations, tokens, writings or pretenses, is guilty of a misdemeanor."
N.J.S. 2A:102-10 said, at the time of the offense in question:
"All moneys received by a contractor from the owner or mortgagee of real estate for the purpose of having a building erected, constructed * * * are trust funds in the hands of the contractor to be applied to the amount of all claims due or to become due and owing from the contractor to all persons furnishing labor or materials to him for the erection, construction * * * of the building * * *, *53 and any other reasonable and necessary charge in connection therewith. Any contractor or any officer, director or agent of the contractor, who pays or consents to the appropriation of such funds for any other purpose prior to the payment of all claims and charges for the payment of which the funds constitute a trust fund, is guilty of a misdemeanor."
On July 27, 1953 Robert E. Wirsching and Mildred L. Wirsching, his wife, executed an agreement to purchase a certain lot in the Township of Wantage, Sussex County, New Jersey, from the defendants trading as The Lake Neepaulin Company. The price was $1,700, payable $100 immediately, and the balance in 32 installments of $50 each, the first becoming due on August 27, 1953. Strangely, there is no mention in the writing as to the intervals at which the subsequent installments were to be paid. The parties seemed to have regarded the obligation as a monthly one. In any event, the matter is of no particular significance in the case.
On November 19, 1953 the Wirschings made a second contract with the Pearson Construction Company, a New Jersey corporation, for the erection of a home on the lot referred to. The price was fixed at $7,828, to be paid $2,312 on signing the agreement, and the balance at the option of the contractor in equal monthly payments evidenced by a promissory note or by the assumption of a purchase money mortgage. This contract was signed by Pearson Construction Company, William Wallace Pearson, president, and by Isabel Pearson. There was no designation after her name, although she was the secretary of the company. The corporate seal was not affixed.
The State does not contend that Pearson Construction Company was not a corporation. But the second count of the indictment incorrectly alleges that the building contract was made with and the down payment given to the defendants as individuals doing business under the name of Pearson Construction Company.
The proof of the State disclosed that the balance due was to be met by a purchase money mortgage to be assumed by the Wirschings. A little over a month after the consummation *54 of this agreement, William Pearson wrote them saying that it superseded some of the provisions of the land purchase agreement as far as payments were concerned. He informed them that in view of the substantial payment already made, no further installments on the lot need be remitted until the house was completed, at which time the mortgage would be assumed. He told them, also, that an application for their mortgage had been submitted to the Howard Savings Institution of Newark, which would look into their credit status within a week or ten days. And he said that if the bank did not complete its investigation within that period, the building work would proceed so as to insure delivery no later than June 1, 1954.
Shortly before the actual signing of the construction contract, but during the negotiations, Pearson did the excavation work for the cellar of the house. The State's principal witness, Robert E. Wirsching, said Pearson told him that it would expedite the building, particularly as the frost would come soon and prevent operations. Wirsching expressed the belief that the work was performed to influence the signing of the contract.
During the negotiations Wirsching was advised that materials and equipment for the construction work were available and stored in a barn, apparently at the nearby lake. He took Pearson's word for it. Materials were never delivered to the job except those to which reference will be made.
The foot of the contract of November 19 contains a notation that all checks were to be made payable to Pearson Construction Company. On that day, however, a certified check for $2,246.20 and an uncertified one for $66.60 drawn to William Wallace Pearson and Isabel Pearson were delivered to them. The larger one was indorsed by the Pearsons and by Isabel Ministrone (whose identity did not appear in the State's case). The smaller one was also indorsed by the payees and by one A.M. Hough, also not identified by the State's proof.
Subsequently, within a week or two, a concrete foundation was constructed. Apparently nothing further was done during *55 the winter. Although the contract did not call for footings, Mr. Wirsching felt that the foundation was not adequate without them. In March 1954, upon request, Pearson installed them. Then some cement blocks were delivered to the site.
The Wirschings never heard from the Howard Savings Institution with respect to the application for mortgage referred to in Pearson's letter of December 26, 1953. They were unable to say whether or not such an application was made.
Around the end of July or early in August they received notice from the First Federal Savings and Loan Association of Port Jervis, New York, that a mortgage commitment of $8,000 had been approved for them and that it was necessary to accept it within 30 days. They visited the Association office and learned that a request for the mortgage had been made in their names, although not signed by them. The commitment was for a construction mortgage which provided for partial payments as the work progressed. According to Mr. Wirsching, he declined the mortgage because it was to be a construction one and his contract called for a purchase-money type to be executed by him on completion of the building. His view was that acceptance of a construction money mortgage meant that the builder would be using his capital to build the house and he would be taking all the risk.
Thereafter no further work was done on the house and his down payments were not returned to him. Proof was adduced to the effect that the cost of the excavation, foundation and footings was approximately $350.
This factual outline is the substance of the case of the State. At its close, a motion was made for a judgment of acquittal as to both defendants. Upon the denial thereof, the defense was presented.
Defendants argue that the propriety of their motion must be determined solely on the basis of the proof at the close of the State's case. Reliance is placed on State v. Fox, 12 N.J. Super. 132 (App. Div. 1951), which holds that the *56 appellate court's duty is to decide the issue without regard to any evidence presented later in the trial.
The doctrine has been criticized on the theory that when a defendant elects to go forward with his defense and his proof supplies the deficiency in the case of the prosecution, he should become bound by the condition of the record at the close of the entire trial. However, our courts seem to have espoused the theory of non-waiver for many years and we must regard the matter as settled. State v. Contarino, 92 N.J.L. 381 (E. & A. 1918); State v. Bacheller, 89 N.J.L. 433 (Sup. Ct. 1916).
Under the early practice in New Jersey the granting or denial of a motion to acquit at the end of the State's case was discretionary with the court. Denial thereof was not reviewable until made so by section 136 of the Criminal Procedure Act (Comp. Stats. 1863, § 136). Under that legislation, the appellate courts were required to determine whether the defendant suffered manifest wrong or injury through the ruling of the trial court on a matter of discretion. Accordingly, the rule came into being that the resolution of the problem of error in the denial of such a motion must be predicated "upon the evidence as it stood when the motion was made." State v. Bacheller, supra, 89 N.J.L., at pages 435, 436.
In the Bacheller case Justice Bergen, speaking for the Supreme Court, said:
"In neither of these cases (referring to earlier ones) was the testimony of the defendant considered, and from them it appears that in cases governed by the sections of our Criminal Procedure Act above mentioned, a defendant is entitled to the benefit of a review of an erroneous refusal to direct a verdict of acquittal at the close of the state's case, and that an exception to such ruling is not waived by the defendant because he proceeds with his defense. This is a just rule, for the policy of the law is against compelling a person charged with a crime to prove his innocence until the state has made a case from which guilt may be inferred. There is no such thing as a nonsuit in a criminal case, and at the close of the state's case there must be evidence from which an inference of guilt may be drawn, or the defendant is entitled to an acquittal as a matter of law. and that legal right will not be presumed to be waived because he proceeds with his defense." (Insertion ours)
*57 In discussing the suggestion of waiver, the court continued:
"* * * This comes perilously near compelling the accused to convict himself, since under the practice thus sanctioned the defendant's motion, made when no case has been made against him, may be denied, with the result that the defendant, at his peril, must either forego making any defense on the merits, or else make such defense at the risk of having isolated pieces of his testimony used against him to cure an exercise of discretion, wrongful when made, which the Legislature has given him the right to review, and which our courts have said was to be reviewed, `upon the evidence as it stood when the motion was made.' * * *."
It may be noted that R.R. 1:5-1, the present practice rule, relating to the nature of review in criminal causes, provides that error in any ruling of the court or "in the denial * * * of any matter resting in discretion * * * shall be cause for reversal if * * * it appears from the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury." (Emphasis ours.)
Perhaps it was the intention of the Supreme Court to change the old rule and to require the validity of the denial of such a motion to acquit to be decided on the basis of the entire record, including the defense. But section 136 of the former Criminal Procedure Act, supra, contained substantially the same language. It ordained that when the entire record was brought up on appeal, a reversal should be granted where it appeared on such record that the defendant suffered manifest wrong or injury, either in the admission or rejection of testimony or in the charge of the court or in the denial of any motion by the court which was a matter of discretion. Against such a background we consider it incumbent on this court to follow the doctrine of the cases. See State v. McCarthy, 30 N.J. Super. 6, 9 (App. Div. 1954); State v. O'Shea, 28 N.J. Super. 374, 378 (App. Div. 1953), affirmed 16 N.J. 1, 4 (1954), with express reservation of the problem; cf. Annotation, 17 A.L.R. 910, 925 (1922).
With respect to the first count of the indictment, the State was under the duty of showing that the defendants obtained $2,318.80 from the Wirschings by means of false *58 promises to construct a house for them, which promises were made knowingly and designedly with intent to cheat and defraud them of the money.
In our judgment, the circumstances proved by the State fell short of creating a jury question as to the existence of an intent to defraud at any time when a promise to build was made, either during the negotiations for or at the time of execution of the contract. At most, it showed breach of a contract after partial performance thereof.
The Supreme Court has said that a promise to construct a house in the future necessarily involves the assertion of an existing state of mind. The crime contemplated by the statute as arising from a false promise refers to a state of mind  a present intention  not to perform, which exists when the promise is made. The inclusion of the words "false promises, statements, representations" in the statute indicates a legislative intention to make criminal the false statement of an existing state of mind. State v. Kaufman, 18 N.J. 75, 80 (1955). The record reveals no facts from which a logical and reasonable inference can be drawn of the type necessary to establish a jury question as to the guilt of the defendants. And this is particularly true as to Mrs. Pearson. Cf. State v. Walsh, 9 N.J. Super. 43 (App. Div. 1950).
A showing of breach of contract for which a civil liability would exist must be differentiated from the criminality charged in the indictment.
Thus it follows that error was committed in refusing to acquit on this count when the State rested its case.
Moreover, our attention is called to the following portion of the charge of the court to which objection was noted:
"Now the question is: At the time this contract was made or at any time after this contract, S-2, was made, did the Pearsons intend to cheat or defraud the complaining witnesses."
As indicated in State v. Kaufman, supra, violation of the statute arises from the existence of a present intention not to perform when the promise is made. An intention not to perform formulated subsequent to the promise and after *59 receipt of the consideration therefor would not create the criminal liability contemplated by the statute.
Consequently the objection to the quoted portion of the charge was well taken and, of itself, constitutes such prejudicial error as to require reversal.
As to the second count of the indictment, the test to be applied in determining whether a jury question of guilt had been presented at the time of the motion, is the same as that discussed above. It was the duty of the State at that juncture to have presented some facts from which violation of N.J.S. 2A:102-10 was a reasonable and legitimate inference. In other words, the evidence should have shown directly or by way of reasonable inference that defendants as contractor, or as officers, directors or agents of the contractor, had paid or consented to the appropriation of the $2,312.80 received from the Wirschings for some purpose other than performance of the building contract prior to the payment of all claims and charges for the satisfaction of which that money constituted a trust fund.
The sum of the State's proof seems to be that the Wirschings' check of $2,312.80 was given to the Pearsons and cashed rather than deposited by them. What was done with the proceeds was not shown. Part performance representing a cost of about $350 and then, after an abortive attempt at a mortgage loan, cessation of work without return of the balance of the down payment, were also proved. And evidence was introduced of conversations between Mr. Wirsching and Pearson to the effect that the equipment and supplies necessary to build the house were in a nearby barn which was used as a place of storage.
Failure to erect a building after acceptance of money to do so does not establish the crime contemplated by the statute. The criminality arises only when the contractor or officers, or directors or agents thereof pay or consent to the payment or appropriation of the construction moneys for another purpose prior to the payment of all proper claims and charges thereon. State v. Bleichner, 11 N.J. Super. 542 (App. Div. 1951).
*60 In our view, the record made by the State's case was not adequate to justify denial of the motion for acquittal as to either defendant.
Appellants challenge the admissibility of questions propounded by the prosecutor, the manifest purpose of which was to insinuate that the male Pearson is a disbarred attorney. The general rule to be found in the cases is that for the purpose of attacking credibility it may be shown on cross examination that a witness is a disbarred attorney. State v. Weleck, 34 N.J. Super. 267, 272 (Cty. Ct. 1955); United States v. Rubenstein, 151 F.2d 915, 919 (2 Cir. 1945), certiorari denied 326 U.S. 766, 66 S.Ct. 168, 90 L.Ed. 462; United States v. Buckner, 108 F.2d 921 (2 Cir. 1940), certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016; Batease v. Dion, 275 App. Div. 451, 90 N.Y.S.2d 851 (App. Div. 1949); Hyman v. Dworsky, 239 App. Div. 413, 267 N.Y.S. 539 (App. Div. 1933); In re Thorman's Estate, 162 Iowa 237, 144 N.W. 7 (Sup. Ct. 1913); Lansing v. Michigan Central Ry. Co., 143 Mich. 48, 106 N.W. 692 (Sup. Ct. 1906); People v. Dorthy, 156 N.Y. 237, 50 N.E. 800 (Ct. App. 1898); 58 Am. Jur., Witnesses, § 733, at p. 397. Limitations, if any, which ought to be imposed upon its use in our State need not be explored here. Suffice it to say that where a disbarred attorney is a defendant in a criminal proceeding involving a charge of dishonesty or false statement, the fact of his disbarment is admissible on the issue of veracity. Cf. Rule 21, Report of Committee on Revision of the Law of Evidence, at p. 42 (1955).
For the reasons stated, the judgments of conviction are reversed.