STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES DEVENS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 27, 1958—Decided February 3, 1958.

Before Judges CLAPP, JAYNE and SCHETTINO.

*Mr. Howard Stern* argued the cause for appellant.

*Mr. Archibald Kreiger,* Deputy Attorney-General, argued the cause for respondent (*Mr. Charles S. Joelson,* Deputy Attorney-General, Acting Passaic County Prosecutor, attorney).

The opinion of the court was delivered by

JAYNE, J. A. D. In response to the present appeal, we have reviewed the judgment of conviction of the defendant in the Passaic County Court entered in pursuance of an indictment charging him with having fraudulently obtained the property of another on February 23, 1954 by means of false promises in violation of *N. J. S.* 2A:111–1. Legislatively historical, see *L.* 1898, *c.* 235, § 202, *p.* 851.

One John F. McCann was, and perhaps continues to be, a dealer in used motor vehicles under the trade name "Hyway Motor Sales." His son, John F. McCann, Jr., was associated with him in the conduct of the business. It was the practice of the McCanns as well as that of other used-car dealers to sell their vehicles through an intermediary who had himself discovered the actual purchaser. The adopted course of procedure was that the intermediary would disclose to the dealer the financing agreement between the purchaser and the bank; the title to the vehicle would be transferred by bill of sale from the dealer to the intermediary, who would issue his personal check to the dealer with the mutual understanding that the payment of the check would be postponed until the prompt consummation of the sale of the car by the intermediary to the actual purchaser. In fact, the plan contemplated that the intermediary would pay the check issued to the dealer out of the receipts of his sale to the purchaser. The dealer, of course, immediately upon receipt of the intermediary's check as "security," delivered the bill of sale and surrendered possession of the vehicle to the intermediary.

Transactions of that essence between McCann, Sr., and the defendant implicating the sale of three used cars had satisfactorily occurred prior to that of February 23, 1954. The transaction on the date last mentioned was between the defendant and McCann, Jr., but otherwise in pursuit of the same procedure and upon the same contractual elements. The negotiations related to the "possible prospect" of selling three used cars displayed on the McCann premises. Again the "bank contracts" relative to each car were produced,

containing the name of the prospective purchaser; the bills of sale and the vehicles were delivered to the defendant, and he delivered to McCann his personal check for each vehicle.

Significantly, it is an acknowledged fact that McCann, Jr., at the time of the acceptance of the defendant's checks, knew that the latter's bank account upon which they were drawn was then insufficient to permit their payment. Indeed, the amount of the balance of the bank account was then $37. The checks in the aggregate called for the payment of $2,550. Again in this instance it seems to have been contemplated that the presentation of the defendant's checks for payment would abide the sales of the vehicles to the respective purchasers named in the finance agreements. However, it eventuated that the defendant neither paid the checks nor returned the cars to McCann.

Obviously a collation of the facts reveals nothing more than a contractual promise on the part of the defendant to discharge his obligations upon the occurrence of a future event. The indictments accusing the defendant of uttering false checks to be immediately payable were *nolle prossed* on motion of the State. *Vide, N. J. S.* 2A :111–15; *State v. Barone,* 98 *N. J. L.* 9 (*Sup. Ct.* 1922).

The applicable statute in the present prosecution of the defendant, as we have previously noted, is *N. J. S.* 2A :111–1. The transcript of the evidence does not disclose by any logical inference that the so-called "bank finance agreements" displayed to McCann were spurious, ungenuine, and invalid, or that the names therein of the prospective purchasers were fictitious. Nothing more than surmise and conjecture supported the ultimate suspicion that the prior completed transactions were intentionally designed to decoy the McCanns.

Embodied in the State's evidence were the disclosures of the circumstances that perhaps as early as two days after the transaction on February 23, 1954 the defendant instructed McCann to present the checks to the bank for payment, but they were dishonored because the bank itself terminated on February 25, 1954 the unprofitable account of the defendant.

■ Therefore, the State incurred the burden of proving beyond a reasonable doubt that at the time of entering into the transaction of February 23, 1954, the defendant had the then-existing intention not to fulfill his contractual obligations.

Of relevant pertinency is the conviction of our present Supreme Court that "the only thing which can be false about a promise is the present intention, or an existing state of mind, of the declarant not to perform." *State v. Kaufman*, 18 *N. J.* 75, 80 (1955). Consult decisions in *State v. Lamoreaux*, 13 *N. J. Super*. 99 (*App. Div.* 1951); 20 *N. J. Super*. 65 (*App. Div.* 1952); 29 *N. J. Super*. 204 (*App. Div.* 1954), affirmed 16 *N. J.* 167 (1954).

At the conclusion of the introduction of the evidence on behalf of the State, counsel for the defendant impugned the adequacy of the evidence of guilt and requested an acquittal. The motion was denied. We conclude that the denial of the motion was erroneous.

Counsel for the defendant, evidently confident of the substantiality of his motion for an acquittal, resolved to refrain from introducing any defensive testimony whatever. The State supplied no explanatory information of the destination of the cars, although such would seem by an investigation of the records to have been ascertainable.

■ In the recognition of the presumption of innocence present in a criminal case, we are not induced to believe that the evidence adduced by the State generated a logical and legitimate inference factually that the defendant at the time of the specified transaction had the then-existing mental intention to defraud the McCanns. For this reason we resolve that the judgment of conviction should be reversed and the entry of a judgment of "not guilty" directed. Compare, *State v. Walsh*, 9 *N. J. Super*. 43 (*App. Div.* 1950); *State v. Pearson*, 39 *N. J. Super*. 50 (*App. Div.* 1956); *State v. Samurine*, 47 *N. J. Super*. 172 (*App. Div.* 1957).

Counsel for the defendant characterizes the summation of the deputy attorney-general who conducted the prosecu-

tion as inflammatory in composition and highly prejudicial to the defendant. We have not ignored the point.

Such indiscretions of prosecuting attorneys are too frequently brought to the attention of the appellate courts. We again recommend that all such officials read and heed *Canons* 5 and 15 of the *Canons of Professional Ethics,* and the decisions in *State v. D'Ippolito,* 19 *N. J.* 540 (1955); *State v. Siciliano,* 21 *N. J.* 249 (1956); *State v. Smith,* 21 *N. J.* 326 (1956); *State v. Cerce,* 22 *N. J.* 236 (1956), and *State v. Sinnott,* 43 *N. J. Super.* 1 (*App. Div.* 1956), affirmed 24 *N. J.* 408 (1957).

Let a mandate issue reversing the judgment of conviction under review and directing the entry of a judgment of acquittal.