53 N.J. Super. 6 (1958)
146 A.2d 503
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL JOSEPH TRYPUC, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1958.
Decided December 1, 1958.
*8 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Patrick J. McGann, Jr., argued the cause for appellant.
Mr. Solomon Lautman, First Assistant Prosecutor, argued the case for respondent (Mr. Vincent P. Keuper, Monmouth County Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a judgment of conviction on an indictment in two counts charging him with obtaining money by false pretenses in violation of N.J.S. 2A:111-1. The first count charged that defendant on September 10, 1953 obtained $15 from one Guiney by knowingly and designedly, and with intent to cheat and defraud, making false statements, representations and promises that he would print, publish and deliver 200 picture calendars to Guiney on or before November 1, 1953, the $15 being a deposit on the agreed price of $50. The second count charged a similar offense in that he obtained $20 from Guiney on October 2, 1953 in connection with the same transaction. The court sentenced defendant to a State Prison term of from 1-3 years on the first count, giving credit for time spent in custody, and suspended sentence on the second count.
*9 The indictment in question was tried with another charging defendant with issuing a bad check, in violation of N.J.S. 2A:111-15, on which charge the jury returned a not guilty verdict. This matter is not involved in the present appeal. The only witness for the State was Guiney.
Defendant was in the business of making up calendars and picture postcards for advertising various kinds of businesses. He had done some work of that nature for the proprietor of an inn in Highlands, N.J., who introduced him to Guiney in the early part of September 1953. Guiney was engaged in the real estate and insurance business. Shortly thereafter defendant spoke to Guiney about making up calendars for distribution to his customers by way of advertising. It was agreed that defendant was to make up 200 calendars on each of which there was to be a photograph of a certain house designated by Guiney. An agreement was reached and a memorandum of the same given by defendant to Guiney dated September 10, 1953. The memorandum recited that defendant was to make up 200 picture calendars for Guiney for $50; that the picture was to be of the so-called Rubley house, and that $15 had been received by way of deposit. The receipt was signed "G.E.T., P.O. Box 103, Red Bank, N.J." (The initials stood for Grace E. Trypuc, defendant's wife, but no point was made of that fact at the trial.) Although no time for delivery was mentioned on the receipt, Guiney testified that the calendars were to be delivered on or before November 1, 1953.
On or about October 2, 1953 defendant showed Guiney a photograph he had taken of the Rubley house, and Guiney approved it. At that time defendant requested an additional $20 against the price of the calendars, stating that he needed it to pay for materials. Guiney gave him that sum and obtained a receipt similar to the one given for the initial payment. Defendant told Guiney he was going to move shortly, and as soon as he did he would notify him. The calendars were not delivered on November 1. Guiney waited a week or so, and then attempted to get in touch with defendant through the Red Bank post office box address. *10 His letters having gone unanswered, he then tried to locate him and after seven or eight days found him in Leonardo, N.J., to which place he had just moved. Defendant assured him then and on a number of occasions thereafter that he would have the calendars ready in two or three days. After Christmas and New Year's had passed, Guiney told defendant that if he could get the calendars he could still use them. Finally, some time in January, Guiney asked defendant to show him at least one calendar or anything he had bought. Defendant had nothing to show him, finally admitting that "there were no calendars and there would be no calendars." Guiney asked for his money back and, failing to obtain it, went to the police station and filed a complaint on January 15, 1954. The indictment, returned much later, stemmed from this complaint.
Guiney testified that altogether he went to defendant's home at least 50 times in an attempt to collect the $35, both before and after filing the complaint. In the course of the following year Mrs. Trypuc gave Guiney a total of $15 in partial repayment. On cross-examination Guiney volunteered the information that Trypuc had "skipped" before this repayment. Further, that defendant had deserted his wife, to which statement defense counsel objected "unless he [Guiney] can prove it," to which the witness answered "Oh, I can prove that." Guiney also volunteered that the chief of police had brought the complaint to Freehold, the county seat, "so that the statute of limitations wouldn't run out."
Defendant sets out four grounds of appeal: (1) error by the trial court in denying his motion for judgment of acquittal at the close of the State's case; (2) plain error in the trial court's failure to strike prejudicial testimony, i.e., Guiney's reference to defendant's having "skipped" and deserted his wife; (3) error in charging the jury that it should be its object "to arrive at a common conclusion"; and (4) error in charging as to the effect of proof of conviction of crime on the credibility of a witness.
*11 Turning to the first ground of appeal, it is, of course, settled that the sufficiency of the State's case on a defendant's motion for acquittal at the close of the State's case must be determined solely on the basis of the proofs as they stand at that posture of the case. State v. Pearson, 39 N.J. Super. 50, 55-56 (App. Div. 1956). Defendant contends that a directed verdict of acquittal should have been granted at that point in the trial because there was an insufficient basis for an inference that when Guiney made either of the payments defendant at that time had an intention not to perform his promise to deliver the calendars.
N.J.S. 2A:111-1 provides that any person who "knowingly or designedly, with intent to cheat or defraud any other person, obtains any money * * * by means of false promises, statements, representations * * * or pretense, is guilty of a misdemeanor." The statute was enacted as part of L. 1951, 1st Sp. Sess., c. 344, the revision of Title 2 of the Revised Statutes, and replaced the former statute, R.S. 2:134-1 and 2. As pointed out in State v. Kaufman, 18 N.J. 75 (1955), the revision effected an important change in the former statute. Under the prior law a false statement of a present intention as to a future act did not constitute a misrepresentation of an existing or past fact, as required by the statute. State v. Lamoreaux, 13 N.J. Super. 99 (App. Div. 1951). L. 1951, 1st Sp. Sess., c. 344 (N.J.S. 2A:111-1), added the significant word "promises" to the statute, which led our Supreme Court to hold in the Kaufman case, 18 N.J. at pages 79-80, that the inclusion revealed a legislative intention to make criminal false statements as to future as well as past and present facts. "By including the words `false promises, statements, representations, * * *' in this statute the Legislature intended to make criminal the false statement of an existing state of mind." And see State v. Pearson, above, 39 N.J. Super. at page 58.
Although the Lamoreaux case was decided prior to the revision of the statute, the statement therein contained as to the quality of proof necessary to establish a false *12 pretense is equally applicable to the amended statute. The court in that case said (13 N.J. Super. at page 103) that "The negative may be proved circumstantially and inferentially, but the evidence must point to a strong probability of the falsity of the pretense."
The precise issue presented to this court, and to the trial court on the motion for judgment of acquittal, is whether the proofs presented by the State permit an inference grounded in strong probability that defendant obtained money from Guiney on September 10 or October 2, 1953 by false promises, statements, representations or pretenses  in other words, that on the dates mentioned defendant had no intention of delivering calendars as promised. It appears affirmatively from the State's case that defendant, at the time he made his contract with Guiney, was actually in the business of making up cards and calendars for commercial advertising. It also appears that he had satisfactorily supplied other customers with such items. We have, further, the fact that he actually took a photograph of the house designated by Guiney, and showed it to him and obtained his approval when he received the second payment early in October. We have nothing else in September or as of October 2, 1953 on the basis of which the jury could draw an inference that defendant entertained a fraudulent intent at that time. The mere fact that he later defaulted in his promise is no evidence of a fraudulent intent in the first instance.
The only other basis for inferring fraud at the time of the two payments is the fact that defendant eventually left his home. It is dangerous to draw inferences as to why he disappeared. In his testimony Guiney volunteered that defendant had deserted his wife. It may be that his disappearance had something to do with that matter, or perhaps with some other complaint which had been lodged against him with the police  the check charge for which he was eventually tried, for instance.
We do not have here evidence which points to a strong probability of the falsity of defendant's promises at the *13 time they were made and on the basis of which he obtained the monies from Guiney. Such cases as State v. Pearson, above, 39 N.J. Super. 50, and State v. Devens, 48 N.J. Super. 539 (App. Div. 1958), indicate that a conviction for obtaining money under false pretenses cannot be supported on the mere failure of a defendant to perform a contract after receiving money. We conclude that the State had not, at the conclusion of its case, carried the burden required of it.
In answer to a question put at oral argument whether the State could, in the event of a new trial, adduce any more in support of the indictment than it had, counsel for respondent replied that he doubted whether the prosecution could produce additional proof. In the circumstances, the judgment of conviction must be reversed and the entry of a judgment of "not guilty" directed. See State v. Devens, above.
In light of our conclusion, it would ordinarily be unnecessary to discuss any of the other points. Suffice to say that we find the second and third grounds of appeal without merit. There was no objection to Guiney's statement on cross-examination that defendant had "skipped." When, under questioning of the court, he further volunteered that defendant had deserted his wife, there was an objection "unless he can prove it." Guiney said he could. There was no further objection, nor any request that the court strike the testimony. It was not error, as defendant argues, for the court to fail to strike the testimony on its own motion. Guiney's comments were improper, but not so prejudicial, in view of his previous reference to the fact that defendant had skipped, made without objection by the defendant, as to justify reversal.
As to the jury charge that "It should be the object, ladies and gentlemen, of all of you to arrive at a common conclusion," a reading of the entire charge indicates that the objection now made is not justified. The court had instructed that it was the duty of each juror "to reach his or her own judgment after discussion of the facts with his fellow jurors"; that "you should not close your ears and *14 stubbornly stand upon [the] first position" taken. The language claimed to be error was immediately followed by the statement that "you should deliberate together with calmness. It is your duty to arrive at a verdict if it be possible to do so without violating conscientious convictions based upon the evidence. You must be careful and deliberate in weighing the evidence." This instruction is not fairly susceptible of the charge leveled that it forced the jurors to agree to a verdict in which they did not believe. State v. Cottone, 52 N.J. Super. 316, 325 (App. Div. 1958).
The fourth ground of appeal merits more extended discussion. The court was instructing the jury as to the significance of the evidence of defendant's prior convictions of crime. We reproduce the entire paragraph:
"This defendant freely admitted his past criminal record, and the State enlarged upon it and introduced that portion of it that it desired to, and I say to you that this evidence of his past criminal record was permitted by the Court to be introduced for the purpose of testing the defendant's credibility. I charge you that the fact, however, that he was convicted at former times of other offenses is no proof that he is guilty of the offense or offenses that he is now being charged with. Such evidence was admitted for the purpose of aiding you in determining what weight and credit is to be given to the defendant's testimony. The law assumes that a witness who has been convicted of a crime is not as worthy of belief as a witness who has never been convicted of crime, and the fact of conviction is one that you may take into consideration in weighing his testimony." (Italics ours.)
There was no objection to this portion of the charge, and the question is whether the italicized clause, if erroneous, amounts to plain error.
There can be no question that the instruction as to what the law "assumes" was error. There is no rule of law under which it is "assumed" that a witness who has been convicted of a crime is not as worthy of belief as a witness who has not. By act of 1874 (Gen. Stat., p. 1397, § 1), it was provided that "no person offered as a witness in any action or proceeding of a civil or criminal nature shall be excluded by reason of his having been convicted of crime, but such conviction may be shown on the cross-examination *15 of the witness, or by the production of the record thereof, for the purpose of affecting his credit." That act received extended discussion in State v. Henson, 66 N.J.L. 601 (E. & A. 1901), where it was held (at page 606) that the act "[did] not submit to the court, as a question of law, whether the crimes charged should affect credibility; it is a question for the jury, whose province alone it is to say to what extent, if any, credibility shall be affected." This rule was followed in Max v. Kahn, 91 N.J.L. 170, 172 (E. & A. 1917), where the court made it entirely clear that conviction of a crime "may or may not affect the credibility of a witness; and whether in a given case it does or does not is not a question of law to be decided by the court, but a question of fact for the jury," citing the Henson case. And see, generally, 88 C.J.S. Trial § 276, p. 737 et seq. (1955).
While the trial judge did tell the jury that the fact of conviction was one which it might take into consideration in weighing defendant's testimony, nevertheless the incorporation into the charge of the flat statement that the law assumes that one convicted of a crime is not as worthy of belief as a witness who has not been convicted, was bound to carry extraordinarily heavy weight with the jury in its determination of whether to give credence to defendant. The court, in effect, was telling the jury that there was a presumption of law against the credibility of a witness who had been convicted of a crime. In our view, the erroneous impression left with the jurors could not have been cured by the other language used by the trial judge. The likelihood of their having been misled is so strong that the error in the charge should be deemed to be plain error and to require reversal.
Inasmuch as we have decided that the State failed to prove the crime charged and that the trial court should have granted the motion for judgment of acquittal at the close of the State's case, the judgment of conviction is reversed and the entry of a "not guilty" judgment directed.