The Chief Justice
delivered the opinion of the court.
James Brugler sued Fries in the Court of Common Pleas of the county of Warren, for the seduction of his daughter per quod servitium amisit. On the trial, the daughter was examined as a witness by her father, the plaintiff; she testified to her seduction by the defendant, and that he was the father of her child. She underwent a minute cross-examination respecting the circumstances of the charge, and disclosed a course of conduct in the visits of the defendant and her intercourse with him, greatly to her shame. She acknowledged the visits of other young men, and among them one of the name of Shackelton; and was then asked by the defendant’s counsel if she had not said to Shackelton that he was the father of the child.' The plaintiff’s counsel objected to the question, which was overruled by the court and a bill of exceptions sealed. A verdict and judgment *having been rendered for the plaintiff, the defendant seeks here, upon the matters contained in the bill of exceptions, a reversal of the judgment.
*93 The purpose of the question was to discredit the witness, by calling others to contradict her if she answered in the negative, and from her own mouth if she answered in the affirmative, for then she must have told a falsehood to Shackelton with respect to the paternity of the child, or she must have sworn falsely on the trial of the cause. The question was, however, legal and proper for the plaintiff to propound; for the character of the witness was a legitimate subject of inquiry; and he was entitled to disparage and discredit her, even from her own lips, if she thought proper to disclose her own shame and infamy. But the witness was not bound to answer the question. The rule does not seem, even at this late day, to be precisely and firmly settled in England, where the protection of a witness begins ; whether against such answers only as lay open the witness to prosecution for crime, or whether such also as serve to disparage, disgrace or discredit. Peake and Starkie in their treaties on evidence, consider it as a vexata quesiio. 1 Peake 129; 1 Starkie 138. Best, C. J. in a late case said he should only prevent the asking of such questions as might subject witnesses to a prosecution for crime, but not such as merely tended to degrade ihem in their character; 3 Car. and Payne 238. Perhaps the cause of the unsettled state of this question may be found in the somewhat singular remark of Starkie, that the decision is of less practical importance than might have been expected, since whether a witness be or be not bound to answer such questions as tend to his disgrace, it seems to be allowed that the question may be put, and it is obviously of little consequence whether the witness admits that which is insinuated against him or refuses to give an answer. 1 Stark. 144. In this state, however, I consider the rule as settled, at least since the decision of Vaughan v. Perrine, 2 Penn. 728; and that the witness was not bound to answer the question. 9 Cowen 625. According to some recent decisions in England, when the credit of a *94 witness is to be-impeached by proof that he has said something inconsistent with his testimony, he .not only may, but must, be first asked on cross-examination whether he *has said what is intended to be proved. Edmonds v. Walker, 3 Starkie 7; Meagoe v. Simons, 3 Car. and Payne 75; The Queen’s case, 2 Prod. and Bingh. 313; Ewer and Ambrose, 3 B. and C. 746. In the latter case, Bayley, J., said, “ It was competent in cross-examination to have asked the witness if he had sworn in his answer in chancery contrary to the fact he was then deposing, and if he said that he had not, then the plaintiff in order to discredit him might have given the answer in evidence, but he could not do so without putting the preliminary question to him.” The necessity of propounding the question to the witness as the foundation of the production of other proof has, so far as I am informed, never been recognized here, and is not the law of our courts. In Tucker v. Welsh, 17 Mass. Rep. 160, it was held to be unnecessary, and never to have been the practice of this country. I refer to the English cases simply for the purpose of more abundantly shewing that the question may be put.
Although the witness may not be compelled to answer the question-, yet as against the party by whom the witness is called, the question is lawful and proper, and the answer is competent and admissible if the witness declines protection and consents to make it. The protection is the privilege of the witness, not the right of the party. The distinction is clearly and .correctly stated by Justice Washington, in The United States v. Craig, 4 Wash. 732. "A question to a witness which the law will not permit him to answer, as to state the contents of a record, is improper, and the court will not permit it to be put. But if it be such as, if answered one way, would disgrace or criminate the witness, the question is proper, because it is the privilege of the witness to refuse to answer it, and not the law which forbids him, as in the former case. But being a privilege merely, *95 he may waive it and give the answer.” The same doctrine is maintained in Treat v. Browning and wife, 4 Conn. Rep. 108; on a motion for a new trial, the defendant’s counsel insisted that the testimony of one Parks, in relation to his having given a certificate or made a declaration inconsistent with the testimony he had just before given in court, ought not to have been received; that the general rule is, that a witness cannot be called upon to impute to himself a crime or to bring a reproach upon himself; *and that here the witness was called upon to furnish evidence against himself of having sworn falsely. But the court held that the evidence was rightly received. If there was an inconsistency, the witness should have claimed his privilege of exemption from testifying in disparagement of himself, and not the defendants have objected to the admission of his evidence. In Southard v. Rexford, 6 Cowen 259, Sutherland, J., in delivering the opinion of the court, said, “ The witness was not bound to answer the question so far as the answer would criminate himself; and it was the duty of the court to apprise him of his right in that respect; but if a witness under such circumstances thinks proper to waive his privilege, I do not understand it to be either the duty or the right of the court to force it upon him and to deprive the party of the benefit of such disclosure as he may voluntarily make. No man shall be compelled to criminate himself, but if from a sense of justice or any other consideration, he is willing to make disclosures which involve his own character and may expose him to punishment, I know no reason either of law or policy which should prevent him.”
Inasmuch then as the court below refused to permit the question to be put, thereby incorrectly depriving the defendant of the benefit of the answer, if the witness thought proper to, give it, I am of opinion the judgment should be reversed.
Ford, J., dissented.
Drake, J., concurred.
Judgment reversed.