NICOLA DEVICENZO, BY NEXT FRIEND, RESPONDENT,
v. JOHN SOMMER FAUCET COMPANY, APPELLANT.

Argued March 9, 1915—Decided June 14, 1915.

Plaintiff was employed by a contractor to assist in digging a cellar.
    Defendant undertook to build a shed over the excavation. The
    shed was supported by poles which were changed as to location
    as the excavation proceeded. Within ten minutes after defend-
    ant's employes had located one of the poles, and had endeavored
    to adjust it properly to its position, the roof of the structure fell
    and injured the plaintiff. *Held,* that the question of the negli-
    gence of the defendant in constructing the shed and of properly
    maintaining it, as well as the negligence of the plaintiff's em-
    ployers in respect to it, were questions of fact for the jury.
    *Held, also,* that it was not improper upon cross-examination to
    inquire of an examining physician as to his relations with the
    parties for the purpose of showing his interest in the litigation.

On appeal from the Essex Circuit.

For the plaintiff-respondent, *Beecher & Bedford.*

For the defendant-appellant, *McCarter & English.*

The opinion of the court was delivered by

MINTURN, J.   The plaintiff, nineteen years of age, was in-
jured by the falling of the roof of a shed, erected where he
was working, for a contractor, La Conti, who had contracted
with defendant to excavate a cellar under the shed.

The shed was constructed between two buildings, the north
and south ends being open, and the east and west being closed
by the walls of adjoining buildings. The defendant under-
took to shore up the shed during the performance of the
work of excavation by La Conti. There were five poles sup-
porting the shed which was about fifteen feet high from the
bottom of the cellar where La Conti's men were digging.

On the day in question defendant's men placed one pole in
the front part of the excavation, and a carpenter employed

by defendant endeavored to straighten out this pole by striking it at the bottom with a large hammer. The posts were being continually changed by the defendant's men to meet the necessities of the excavation. About twenty minutes before the accident happened the last pole was put in about eight or nine feet distant from where La Conti's men were digging. There is no testimony in the record to show that La Conti's men came in contact with, or in any manner interfered with, the post, so as to cause it to fall; and no explicit or definite explanation appears in the record as to the cause of its fall.

It is inferable from what appears that the defendant's men so negligently placed the posts, or so indifferently dealt with one or all of them as to cause the support of the roof to weaken and cause the shed to fall. That some agency caused it to fall seems perfectly apparent; whether in the first instance it was due to defective construction, or later to negligent care, supervision and maintenance, was a matter of legitimate inference by the jury from the proven facts. It was also for them to determine from all the facts in evidence whether anything which La Conti's men did on the ground operated as a contributing cause to disturb the posts or weaken their support and thereby cause the accident.

These considerations, however, presented a jury question, and the motion to nonsuit as well as the motion to direct a verdict were therefore properly refused. *Dickinson* v. *Erie Railroad*, 85 *N. J. L.* 586; *Clark* v. *Public Service Electric Co.*, 86 *Id.* 144; *Soriero* v. *Pennsylvania Railroad, Id.* 642.

The case at bar is not in its essential facts unlike that of *Sheridan* v. *Foley*, 58 *N. J. L.* 230, where a brick fell from a scaffold where the contractor was building a wall, and struck the workman of the plumber working upon the same building in the cellar. In his opinion the present Chief Justice there stated: "The bricks were in the custody of the defendant's servants at the time when this one fell, and it was their duty to so handle them as not to endanger others who were engaged in other work upon the same premises. This

brick could not have fallen of itself, and the fact that it fell in the absence of explanation by the defendant, raises a presumption of negligence."

This view of the legal rule applicable to the case leads us to conclude that the refusal of the learned trial court to charge the request of the defendant was proper since the charge as an entirety properly presented the case to the jury, and the trial court quite manifestly could not properly select a disjointed fact or situation in the case as a basis for a legal proposition which would be determinative of the rights of the parties to the litigation. *State* v. *Zdanowicz,* 69 *N. J. L.* 619; *Sutton* v. *Bell,* 79 *Id.* 507; *Fernetti* v. *West Jersey, &c., R. R. Co., ante p.* 268.

It is finally urged that there was error in allowing, over objection, a question to be put to the defendant's physician by the plaintiff's counsel, for the purpose of showing his interest in the litigation, as follows:

"*Q.* You are employed regularly as the physician of one or more indemnity insurance companies, are you not?

"*A.* I am an employe of one accident insurance company."

Questions of like import followed, such as "How did you come to examine the plaintiff?" To which the witness answered, "At the direction of Mr. Shale." "*Q.* Who is Mr. Shale?" &c.

These questions were put upon the cross-examination of the witness, who had been previously examined in chief as to his physical examination of the plaintiff, and the result thereof. The questions were therefore proper under the well settled rule of evidence which concedes to the opposing party the right of cross-examination for the purpose of showing the interest of a witness in the subject-matter of the litigation. 1 *Greenl. Evid.* 450; 40 *Cyc.* 2677 and cases.

The admission of cross-examination of this character has been repeatedly held by this court to be in the sound discretion of the trial court; and where it is not manifest that injury may have been done to the rights of the objecting party by its admission, the action of the trial court will not be dis-

turbed. *Bradley* v. *Cleary Co.,* 86 *N. J. L.* 338; *Lachenauer* v. *Lyons & Sons Co.,* 67 *Id.* 677; *Day* v. *Donohue,* 62 *Id.* 380.

In this instance we think the admission of this testimony was not improper, under the rule of evidence adverted to, and it is manifest that its admission has not prejudiced the defendant.

Finding no error in the record the judgment will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Vredenburgh, White, Terhune, Williams, JJ. 14.

*For reversal*—None.