STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. PAUL SANDS AND FRANK SHELDRICK, DEFENDANTS-APPELLANTS.

Argued September 20, 1977—Decided May 1, 1978.

128

*Mr. Stanford M. Singer,* Assistant Deputy Public De-: fender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. William F. Bolan,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

SCHREIBER, J. Frank Sheldrick and Paul Sands were tried as co-defendants for various crimes, including murder. Sheldrick was found guilty of murder in the first degree,

assault with an offensive weapon, threatening the life of another and illegal possession of a firearm. Sands was found guilty of murder in the second degree and illegal possession of a firearm. The Appellate Division, rejecting their several grounds of appeal, affirmed their convictions. 138 *N. J. Super.* 103 (1975). We granted their petition for certification limited to the question of admissibility of prior convictions to attack credibility. 71 *N. J.* 345 (1976).

The salient facts with respect to the crimes may be briefly summarized. The record demonstrates that some antagonism had existed between the defendants and the decedent William White. On the night of August 6, 1973, the defendants went to the Vesuvius Bar on Dewey Avenue in West New York for the purpose of seeking out the decedent. The decedent White and his wife worked in the tavern, which was owned by Mrs. White's father, Louis Indelicato. The State produced proof through Mrs. White, her father, and a patron, that the defendant Sheldrick shot the decedent with a sawed-off shotgun and then threatened Mr. Indelicato. When the shooting occurred, Sands who had been with Sheldrick ran outside.

West New York police officers William Sherman and Jack DeLorenzo, who were in a radio car on Dewey Avenue near the Vesuvius when they heard the gunshot, observed smoke emanate from the tavern, and saw Sands dash out into the street and throw a pistol into the alley. Officer Sherman promptly arrested Sands and retrieved the pistol. He then entered the Vesuvius and arrested Sheldrick who was in the process of exiting with the sawed-off shotgun in hand.

Sands did not testify. Sheldrick claimed that the decedent White had come toward him with the shotgun, that he grabbed the barrel, and that the gun accidentally went off killing White. Over his objections, prior convictions were admitted into evidence to affect his credibility.

We granted certification to reexamine our decision in *State v. Hawthorne*, 49 *N. J.* 130 (1967), in which we had interpreted *N. J. S. A.* 2A:81–12 to require the evidentiary

admission of every conviction of any crime to affect the credibility of any witness.

We have hitherto rejected attacks on the principle of *State v. Hawthorne*. *State v. Mustacchio,* 57 *N. J.* 265 (1970); *State v. Gallicchio,* 51 *N. J.* 313 (1968); *State v. Adams,* 50 *N. J.* 1 (1967). For some critiques see *State v. Johnson,* 65 *N. J.* 388, 395 (1974) (Pashman, J., concurring); Comment, 70 *Yale L. J.* 763, 775–778 (1961); Comment, 78 *Harv. L. Rev.* 426, 440–443 (1964); Note, 22 *Rutgers L. Rev.* 360 (1968); Ladd, "Credibility Tests — Current Trends," 89 *U. Pa. L. Rev.* 166 (1941); 3A *Wigmore, Evidence,* § 982 at 839–840 (Chadbourne rev. 1970). The opinion in *State v. Hawthorne* is bottomed on the history and language of the act, and on the significance to be drawn from a statute providing for expungement of criminal records, *N. J. S. A.* 2A:164–28. Accordingly, we have re-examined each underpinning of the holding.

*N. J. S. A.* 2A:81–12 reads as follows:

For the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his conviction of any crime may be shown by examination or otherwise, and his answers may be contradicted by other evidence. * * *.

This statute was modeled after section 9 of an 1874 act revising the law of evidence. That section stated:

The interest of a witness in the event of the action or proceeding, or his conviction of a crime, may be proved by an examination of such witness or otherwise, and his answers upon such examination may be contradicted by other evidence.

Section 1 of the 1874 act provided

[t]hat no person offered as a witness in any action or proceeding of a civil or criminal nature, shall be excluded by reason of his having been convicted of crime, but such conviction may be shown on the cross-examination of the witness, or, by the production of the record thereof, for the purpose of affecting his credit.

This section can be properly appreciated only with an understanding of the historical context in which it was enacted.

At common law a criminal defendant could not testify on his own behalf. 2 *Wigmore, supra* § 579 at 701. This prohibition existed irrespective of the qualifications of a witness (to be differentiated from a party). The qualifications of a witness were declared by the Legislature in a statute enacted on June 7, 1799 which provided

[t]hat no person, who shall be convicted of blasphemy, treason, murder, piracy, arson, rape, sodomy, or the infamous crime against nature, committed with mankind or with beast, polygamy, robbery, conspiracy, forgery, or larceny of above the value of six dollars, shall, in any case, be admitted as a witness, unless he or she be first pardoned; and no person, who shall be convicted of perjury, of subornation of perjury, although pardoned for the same, shall be admitted as a witness, in any case. [Laws of New Jersey 1703–1820, p. 462 (1831 Revision)]

The 1799 statute did not affect the general disqualification of a criminal defendant to testify on his own behalf. It applied to any witness as distinguished from a defendant who had been convicted of one of the enumerated crimes.

In 1871, the Legislature finally lifted the common law prohibition against a criminal defendant's testifying on his own behalf. By *L.* 1871, *c.* 40, § 1, the Legislature provided that "upon the trial of * * * any person charged with crime, the [defendant] shall be admitted to testify as a witness * * * in his own behalf." See *J. Thayer, Cases on Evidence* 1117 n. 1 (2d ed. 1900). Therefore until 1871, a defendant could not testify even if he had not been convicted of any of the crimes listed in the 1799 act. Many significant crimes were not included. As noted by the court in *State v. Henson,* 66 *N. J. L.* 601, 605–606 (E. & A. 1901):

There are many crimes of great turpitude not specified in the [1799] act. Among others are counterfeiting, sheriff aiding escape of his prisoners, embracery, bribery, compounding of crimes, extortion by judges, fraudulent voting, intentional injury to public property, obstructing railways, producing abortion and larceny under the value of $6.

Convictions not specified in the act were not admissible to affect credibility, this on the theory that an answer to a question could not be compelled when the answer might tend to dishonor or disgrace the witness. *State v. Bailly*, 2 *N. J. L.* 396 (Sussex Oyer & Terminer, 1807). For the same principle see *Fries v. Brugler*, 12 *N. J. L.* 79 (Sup. Ct. 1830) ; *Vaughn v. Perrine*, 3 *N. J. L.* 299 (Sup. Ct. 1811). In 1874 the 1799 act was repealed. As a result, between 1871 and 1874, a criminal defendant, like any other witness, could testify provided he had not been convicted of any of the offenses listed in the 1799 act, and, if he did testify, prior convictions would not be used to affect his credibility.

In *State v. Hawthorne,* we concluded that the 1874 act was intended to remove the harsh disability imposed by the 1799 statute on persons convicted of the enumerated crimes. We reasoned that the clause permitting prior convictions for impeachment was intended to substitute for that disability a general power in the prosecutor to use any prior conviction to impeach a witness. 49 *N. J.* at 133–135. After full reconsideration we have concluded this view was mistaken.

First, the 1874 statute embodied a comprehensive statement of the law of evidence, and its interpretation cannot be left to inferences drawn from its interplay with the 1799 act. The relationship of the 1874 statute and the 1799 act was raised in *State v. Henson, supra*. The defendant contended that the only convictions admissible to affect a defendant's credibility were those enumerated in the 1799 act. The court, in rejecting the contention, held that the 1799 act and the 1874 act must be considered independently because

[the 1799 act] was not repealed by force of the said first section of the act of 1874, because it was inconsistent with it, but there was an express repealer of the [1799 act] in 1874 * * *.

The first section of the present act [1874 act] is an independent act and must be construed according to the language employed by the legislature to express its purpose in enacting it. [66 *N. J. L.* at 604–605]

Furthermore, as noted above, prior to 1874 convictions for offenses not specified in the 1799 act were not admissible to affect credibility. Thus, at the time of the 1874 enactment, many witnesses were not subject to impeachment because of prior convictions. Yet, the effect of that act was to subject for the first time the credibility of such witnesses to attack because of criminal convictions. To conclude that the Legislature was motivated by a desire to reduce the harshness of the disqualifications caused by the 1799 statute does not follow. The history indicates that the Legislature did not adopt the credibility section in the 1874 act as a *quid pro quo* for relieving a defendant of the 1799 act disqualifications or as a substitute for the same disqualifications (a position advanced by the dissenting opinion in *State v. Henson,* 66 *N. J. L.* at 614).

In *State v. Hawthorne,* the language in the expungement act, *N. J. S. A.* 2A:164-28, was said to support the position that convictions of crimes were admissible without qualification to affect credibility. 49 *N. J.* at 138-140. The expungement act authorizes a person convicted of a crime (other than treason, misprision of treason, anarchy, assault on a head of state, rape, kidnapping, arson, robbery, or certain homicides) to have the record expunged 10 years after conviction or release from imprisonment or parole, there being no subsequent conviction, and to be relieved "from such disabilities as may have * * * existed by reason thereof * * *." The contention was made that the Legislature which adopted the initial expungement act in 1931, *L.* 1931, *c.* 345, was aware of the disabilities which "follow in the wake of conviction of crime." It was then implied that one such disability was to have one's credibility subject to attack by evidential use of a prior conviction and that the Legislature therefore did not intend to authorize a court in its discretion ever to reject such evidence on grounds of relevancy. There are two major difficulties with this analysis. The expungement statute was enacted long after and is unrelated to the

1874 evidence act. Nothing in the language or history of the expungement act serves as an interpretative guide to the 1874 act. Second, impeachment evidence does not render a person incapable of being a witness and accordingly is not a "disability". We find reliance on the expungement statute is misplaced.

■■ Lastly, in *State v. Hawthorne,* we found support in a comment in *State v. Henson, supra,* that "[t]he act of 1874 does not submit to the court, as a question of law, whether the crimes charged should affect credibility; it is a question for the jury, whose province alone it is to say to what extent, if any, credibility shall be affected." 66 *N. J. L.* at 606. This comment must be read in context. In *State v. Henson,* the issue was whether the court committed error in permitting the defendant to be cross-examined on convictions of crimes which were not listed in the 1799 statute. The defendant contended that the reach of the 1874 act sanctioning cross-examination with respect to convictions was so restricted. The court concluded that the word "crime" in the 1874 act was without qualification, *id.* at 605, and the trial judge did not err in permitting the cross-examination. It held only that the statute did not compel a trial judge to restrict cross-examination to the previously incapacitating crimes "as a question of law." *Id.* at 606. This holding merely rejected the contention that some types of crimes could never be used for impeachment. Once admitted, their weight with respect to credibility was for the jury. The court was not concerned with whether a trial judge may exercise discretion in excluding evidence of a prior crime, the issue before us.[1]

---

[1] In *State v. Hawthorne,* we commented that we may have overstated the Legislature's will, and, if so, the Legislature would give the matter appropriate consideration. 49 *N. J.* at 140–141. The Legislature has taken no action. Two rules of construction have been expressed to explain legislative inaction. One is that inaction signifies acquiescence in the judicial interpretation. *State v. Monahan,* 15 *N. J.* 34, 60 (1954) (Oliphant, J., dissenting); *Miller v. Bd. of Chosen Freeholders,* 10 *N. J.* 398, 413 (1952). The other is that

We are satisfied that the historical background, the expungement act and the comment referred to in *State v. Henson* do not support the conclusion that every criminal conviction is automatically admissible under all circumstances to affect the credibility of a criminal defendant.

Facially, the language of *N. J. S. A.* 2A:81-12 does not specify that criminal convictions must be admitted into evidence. The present law provides that to affect credibility a person's "*interest*" in the result of the action, proceeding or matter *or his conviction* of any crime may be shown * * *." *N. J. S. A.* 2A:81-12 (emphasis supplied).

Section 1 of the 1874 act, after reaffirming the right of a defendant to testify on his own behalf, permitted convictions to be shown "for the purpose of affecting his credit."

Section 3 of the act provided:

No person shall be disqualified as a witness in any suit or proceedings at law or in equity by reason of his or her interest in the event of the same as a party or otherwise, but such interest may be shown *for the purpose of affecting his or her credit* * * *. [Emphasis supplied]

Section 9, as noted above, read:

The interest of a witness in the event of the action or proceeding, or his conviction of a crime, may be proved by an examination of such witness or otherwise, and his answers upon such examination may be contradicted by other evidence.

Justice Jacobs remarked in his concurring opinion in *State v. Hawthorne, supra*:

It seems unlikely that when the Legislature enacted the 1874 revision it had any notion at all of restricting the court's discretionary powers on matters of remoteness and the like. [49 *N. J.* at 151]

"[l]egislative inaction can mean only that the Legislature did not act." *Donaldson v. Bd. of No. Wildwood*, 65 *N. J.* 236, 240–241 n.* (1974) ; *Schmoll v. Creecy*, 54 *N. J.* 194, 203 (1969). We incline to the latter view. The intent expressed in *N. J. S. A.* 2A:81-12 is a judicial question with respect to which the inaction of subsequent legislatures is not dispositive.

This comment takes on added significance when the historical status and treatment of interest evidence, which as we have seen was statutorily referred to in the same manner as prior conviction evidence, are analyzed. At common law, anyone having an interest in the case was not competent to testify. 2 *Wigmore, supra* § 576 at 685–687, quotes from 1 *Starkie, Evidence* *83–84 (1824) as follows:

The law will not receive the evidence of any person, even under the sanction of an oath, who has an interest in giving the proposed evidence, and consequently whose interest conflicts with his duty. This rule of exclusion, considered in its principle, requires little explanation. It is founded on the known infirmities of human nature, which is too weak to be generally restrained by religious or oral [*sic*] obligations, when tempted and solicited in a contrary direction by temporal interests. There are, no doubt, many whom no interests could seduce from a sense of duty, and their exclusion by the operation of this rule may in particular cases shut out the truth. But the law must prescribe general rules; and experience proves that more mischief would result from the general reception of interested witnesses than is occasioned by their general exclusion.

In 1855 the Legislature eliminated this common law prohibition and substituted the provision that "such interest may be shown for the purpose of affecting the credibility of the witness." *L.* 1855, *c.* 236, § 1. The 1855 act removed interest as a ground of incompetency, just as the 1871 act lifted the prohibition against a criminal defendant from testifying.

The 1874 statute reaffirmed elimination of the common law disqualifications of an interested witness and a criminal defendant. However, the act permitted introduction of evidence of interest and conviction of a crime for the purpose of "affecting" the witness's "credit". Interest or a prior conviction was to be proved in the same manner. This common treatment in the 1874 act has been continued in the existing statute, *N. J. S. A.* 2A:81–12. It is reasonable to conclude that the Legislature intended the courts to apply the same ground rules for admissibility of these two types of evidence being utilized for the same purpose, namely to affect credibility. In this manner, the statute is construed as a unit

in accord with the principle that "each part * * * should be construed in connection with every other part * * * so as to produce a harmonious whole." 2A *Sutherland, Statutory Construction,* § 46.05 at 56 (Sands 4th ed. 1973).

Our courts have historically exercised their discretion with respect to admissibility of interest evidence. In a case decided only one year after the 1874 act was adopted, the Court of Errors and Appeals in dictum alluded to the discretionary authority of the trial judge with respect to proof concerning credibility:

> The cardinal rule in the trial of causes is, that the evidence shall be confined to the issues made by the parties. An adherence to this rule is of great practical importance in trials by jury. In almost every case of controverted facts, an infinite variety of extraneous circumstances may be suggested, which may bear remotely upon the issues involved, or upon the credibility of the witnesses. The admission of the proof of such circumstances must be left to the discretion of the judge, otherwise the jury might be confused by the multitude of collateral issues, tending to a miscarriage of the cause, and the trial expanded to an unreasonable extent. [*Schenck v. Griffin,* 38 *N. J. L.* 462, 471 (E. & A. 1875)]

In *DeVicenzo v. John Sommer Faucet Co.,* 87 *N. J. L.* 645 (E. & A. 1915), the court asserted in reference to interest evidence:

> The admission of cross examination of this character has been repeatedly held by this court to be in the sound discretion of the trial court; and where it is not manifest that injury may have been done to the rights of the objecting party by its admission, the action of the trial court will not be disturbed. [*Id.* at 647–648]

*See also Day v. Donohue,* 62 *N. J. L.* 380, 383 (E. & A. 1898) ; *Lackenauer v. Lyon & Sons Brewing Co.,* 67 *N. J. L.* 677, 679 (E. & A. 1902) ; *State v. Quinlan,* 86 *N. J. L.* 120, 131 (Sup. Ct. 1914), aff'd o. b. 87 *N. J. L.* 333 (E. & A. 1915). It is also well established that a trial judge has broad discretion in controlling the scope of cross-examination to test credibility. *Chiesa v. Public Service Co-ordinated Transp.*

*Co.,* 128 *N. J. L.* 69, 73 (E. & A. 1942). There being discretionary authority vested in the trial court with respect to interest evidence, it seems reasonable to conclude that a similar discretion was imparted in connection with prior conviction evidence.

In other jurisdictions having statutes containing language comparable to *N. J. S. A.* 2A:81–12, courts have found that admissibility of criminal convictions is vested in the sound judicial discretion of the trial court. *See State v. Martin,* —— *Iowa* ——, ——, 217 *N. W.* 2d 536, 541–543 (Sup. Ct. 1974); *People v. Jackson,* 391 *Mich.* 323, 217 *N. W.* 2d 22, 24–26 (Sup. Ct. 1974); *People v. Beagle,* 6 *Cal.* 3d 441, 99 *Cal. Rptr.* 313, 492 *P.* 2d 1, 7–8 (Sup. Ct. 1972); *State v. Driscoll,* 53 *Wis.* 2d 699, 193 *N. W.* 2d 851, 857 (Sup. Ct. 1972); *People v. Montgomery,* 47 *Ill.* 2d 510, 268 *N. E.* 2d 695, 697–698 (Sup. Ct. 1971); *State v. Marquez,* 160 *Conn.* 47, 273 *A.* 2d 689, 691 (Sup. Ct. 1970); *Asato v. Furtado,* 52 *Haw.* 284, 474 *P.* 2d 288, 294–296 (Sup. Ct. 1970); *Luck v. United States,* 121 *U. S. App. D. C.* 151, 156, 348 *F.* 2d 763, 768 (D. C. Cir. 1965);[2] *cf. People v. Sandoval,* 34 *N. Y.* 2d 371, 357 *N. Y. S.* 2d 849, 850, 314 *N. E.* 2d 413 (Ct. App. 1974). *But see, e. g., State v. West,* 285 *Minn.* 188, 173 *N. W.* 2d 468, 472–473 (Sup. Ct. 1970); *Commonwealth v. West,* 357 *Mass.* 245, 258 *N. E.* 2d 22, 24 (Sup. Jud. Ct. 1970). This position insures a fairer trial by allowing exclusion of a remotely related conviction with its tendency to lead the jury to believe the defendant has a criminal disposition. See *McCormick, Evidence,* § 43 at 89–90 (2d ed. 1972); *Kalven and Zeisel, The American Jury*

---

[2]As a result of a subsequent statutory change, the *Luck* decision no longer states the rule in the District of Columbia. See *Taylor v. United States,* 280 *A.* 2d 79, 81 (D. C. App. 1971). The *Luck* rationale for refusing to construe the original statute as removing the trial court's discretion to exclude prior conviction evidence has been accepted in many other jurisdictions, see, *e. g., People v. Jackson, supra;* its guidelines for the exercise of that discretion have been adopted in several. See, *e. g., People v. Beagle, supra.*

159–161 (1966).[3] Furthermore, mandatory admissibility unquestionably discourages many defendants from taking the stand, and the fact-finding process will be enhanced to the extent that defendants are encouraged to and do testify. *See generally* 5 J. Bentham, *Rationale of Judicial Evidence*, Bk. 9, ch. 3 at 381–385 (1827).

It has been argued that not all crimes are related to or have a bearing on credibility. The *Uniform Rules of Evidence R.* 21, in line with that thinking, proposed that the conviction must be for a crime involving dishonesty or a false statement. Our Supreme Court Committee on Evidence recommended that the crime involve fraud, lack of veracity or false statement. See 1963 *Report of Supreme Court Committee on Evidence, Rule* 21, at 65–66. This recommendation was rejected by the Legislature, it apparently believing that a witness's convictions for any crime might shed some light on his credibility. We have previously recognized this nexus.[4] In *State v. Sinclair,* 57 *N. J.* 56, 64 (1970), we

[3]We are fully aware of the danger that a jury might improperly use a prior conviction as evidence of the defendant's criminal propensity. We have instructed trial judges to explain carefully the limited purpose of prior conviction evidence. *See State v. Sinclair,* 57 *N. J.* 56, 63 (1970).

[4]We discern no federal or state constitutional problems. In *Spencer v. Texas,* 385 *U. S.* 554, 87 *S. Ct.* 648, 17 *L. Ed.* 2d 606 (1967), the Court in *dicta* implicitly approved the use of prior conviction evidence for impeachment where "the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence." *Id.* at 561, 87 *S. Ct.* at 652, 17 *L. Ed.* 2d at 612. See also *McGautha v. California,* 402 *U. S.* 183, 91 *S. Ct.* 1454, 28 *L. Ed.* 2d 711 (1971) ; *United States v. Webster,* 522 *F.* 2d 384, 385 (8th Cir. 1975). In *McGautha* the Court observed that :

[t]he criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. * * * Although a defendant has a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether com-

noted that admission of prior conviction evidence "derives from the idea that there is a basis in reason and experience why one may place more credence in the testimony of one who has lived within the rules of society and the discipline of the law than in that of one who has so demonstrated antisocial tendency as to be involved in and convicted of serious crime. * * * [I]t hardly seems fair to suppress such facts and let him testify with the same credit as one who has led a more blameless life." *Id.* at 64, quoting from *State v. Harless*, 23 *Utah* 2d 128, 130, 459 *P.* 2d 210, 211 (1969). There is, of course, another point of view epitomized by Bentham's example that a murder conviction might be used to impeach the truthfulness of a witness who treasured truth so highly that he had killed a person who accused him of lying. 5 *J. Bentham, supra,* Bk. 9, ch. 4 at 101. Compromise positions suggested between these two extremes may be found in the *Federal Rules of Evidence R.* 609, the proposed *Uniform Rules of Evidence R.* 21, and our Supreme Court Com-

---

pelling the election impairs to an appreciable extent any of the policies behind the rights involved. [*Id.* at 212, 91 *S. Ct.* at 1470, 28 *L. Ed.* 2d at 729 (citation omitted)]
And it stated:
 It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject-matter of his direct examination. * * * It is not thought overly harsh in such situations to require that the determination whether to waive the privilege takes into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior conviction or the like. * * * Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify. [*Id.* at 215, 91 *S. Ct.* at 1471, 28 *L. Ed.* 2d at 731 (citations omitted)]
We adhere to the view that the Legislature's finding of a nexus between conviction of a crime and credibility is not irrational, *State v. Sinclair*, 57 *N. J.* 56, 64 (1970), and that the statute meets constitutional muster. *State v. Brown*, 41 *N. J.* 590, 592, *cert.* den. 377 *U. S.* 981, 84 *S. Ct.* 1888, 12 *L. Ed.* 2d 749 (1964) ; *State v. Garvin*, 44 *N. J.* 268, 275–276 (1965).

mittee's proposed *Evidence Rule* 21. Adoption of any of these guidelines may be accomplished pursuant to the Evidence Act, 1960, *N. J. S. A.* 2A:84A-33–44. Meanwhile, we respect the Legislature's judgment, *N. J. S. A.* 2A:81–12, that in principle credibility may be affected by conviction of any type of crime.

Our rules of evidence prescribe a basic guideline for trial judges. Rule 4 reads:

> The judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury.

This rule is in harmony with the pre-existing law. See *DeVincenzo v. John Sommer Faucet Co., supra,* and related cases cited above. More recently it is generally within the discretion of the trial court to exclude remotely relevant evidence, the probative value of which is offset by the possible confusion of issues and danger of undue prejudice.

We hold that whether a prior conviction may be admitted into evidence against a criminal defendant rests within the sound discretion of the trial judge. His discretion is a broad one which should be guided by the considerations which follow. Ordinarily evidence of prior convictions should be admitted and the burden of proof to justify exclusion rests on the defendant.

The key to exclusion is remoteness. Remoteness cannot ordinarily be determined by the passage of time alone. The nature of the convictions will probably be a significant factor. Serious crimes, including those involving lack of veracity, dishonesty or fraud, should be considered as having a weightier effect than, for example, a conviction of death by reckless driving. In other words, a lapse of the same time period might justify exclusion of evidence of one conviction, and not another. The trial court must balance the lapse of time and the nature of the crime to determine

whether the relevance with respect to credibility outweighs the prejudicial effect to the defendant. Moreover, it is appropriate for the trial court in exercising its discretion to consider intervening convictions between the past conviction and the crime for which the defendant is being tried. When a defendant has an extensive prior criminal record, indicating that he has contempt for the bounds of behavior placed on all citizens, his burden should be a heavy one in attempting to exclude all such evidence. A jury has the right to weigh whether one who repeatedly refuses to comply with society's rules is more likely to ignore the oath requiring veracity on the witness stand than a law abiding citizen. If a person has been convicted of a series of crimes through the years, then conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible.

In the instant case, we are satisfied that no error was committed with respect to the defendant Sands. He did not raise the issue before the trial court or the Appellate Division. Before us for the first time he has urged that his failure to testify was "fear lest his record of prior offenses come to the attention of the jury" and that he "was intimidated into declining to take the witness stand." These unsupported and unwarranted assertions conflict with reality. Sands, never indicating such fear at trial, did not join in his co-defendant's efforts to limit the evidential effect of prior convictions. Sands' trial tactics in deciding not to testify were in no way motivated by his prior record. His trial counsel remarked at sentencing that Sands had only two blemishes on his record, a disorderly persons offense and a youthful offender adjudication in New York, neither of which was a criminal conviction admissible into evidence for impeachment at his trial. See *People v. Geer*, 42 *N. Y.* 2d 170, 397 *N. Y. S.* 2d 613, 366 *N. E.* 2d 273 (Ct. App. 1977) ; *State v. Laws*, 50 *N. J.* 159, 179 (1967), mod. on other grounds, 51 *N. J.* 494, *cert.* den. 393 *U. S.* 971, 89 *S. Ct.* 408, 21 *L. Ed.* 2d 384 (1968).

Sheldrick's position is somewhat different. At the conclusion of the State's case, Sheldrick moved (1) that the court limit the number of convictions which could be adverted to on cross-examination; and (2) that the prosecutor's inquiries be restricted to whether the defendant had been convicted of a crime, and, if so, how many times. The trial court denied the motions. Properly feeling itself bound by *State v. Hawthorne,* it held there would be no limit on the number of convictions to which reference could be made. The trial court also stated that the prosecutor's questions generally would be limited to the nature of the offense, the date of the conviction and the sentence given. The charge emphasized that the convictions were to be considered only as bearing on Sheldrick's credibility and not as evidence that he was more likely to have committed the crimes charged or as evidence tending to prove any of their elements.

 Sheldrick's prior record was extensive. Between 1950 and 1971 he had been convicted of assault and battery, atrocious assault and battery (two convictions), larceny (three convictions), robbery, obtaining money by false pretenses, issuing worthless checks, entering without breaking, interstate transportation of stolen property, and being a fugitive from justice. He was placed on probation in 1950 for two years, incarcerated between June 1952 and August 1954, May 1956 and September 1959, November 1966 and March 1968, November 1970 and March 1971, August 1971 and March 1973. Many of his offenses were committed before the full term of his prior sentences had expired. He had been released from jail in March 1973, and the incident in question occurred on August 7, 1973. Under these circumstances sound discretion clearly warranted admissibility of all the prior convictions.

 Furthermore, this was not a "close case." A reading of the transcript leads overwhelmingly to the judgment that the jury's verdict was sound. The testimony of three eye-witnesses and the police officer who apprehended Sheldrick with gun in hand as he was leaving the Vesuvius Bar is

most compelling. Further the defendant's testimony that the killing was due to misadventure was not believable. He claimed that White, shotgun in hand, approached him, that he grabbed the gun barrel and pushed it to the floor, and that somehow the gun fired. His version not only was contradicted by the eyewitnesses, but cannot be squared with the uncontroverted medical testimony that the pellets entered White's chest and abdomen. Even if it had been erroneous to have admitted all the prior convictions, and we are satisfied it was not, such error would be harmless at best. *State v. LaPorte,* 62 *N. J.* 312, 320 (1973) ; *State v. Macon,* 57 *N. J.* 325, 336–338 (1971) ; *R.* 2:10–2.

In summary then, we hold that *N. J. S. A.* 2A: 81–12 does not mandate that every prior conviction be admitted into evidence to affect credibility. The trial judge shall admit evidence of criminal convictions to affect credibility of a criminal defendant unless in his discretion he finds that its probative force because of its remoteness, giving due consideration to relevant circumstances such as the nature of the crime, and intervening incarcerations and convictions, is substantially outweighed so that its admission will create undue prejudice. By recognizing this discretionary power in the trial judges, we shall have removed an obstacle "in their conscientious efforts to insure fair trial and do justice." *State v. Hawthorne,* 49 *N. J.* at 149 (Jacobs, J., concurring in result). Our overruling of *State v. Hawthorne* this day shall have a prospective effect and be applied only to trials commencing hereafter.

The judgments of convictions are affirmed.

PASHMAN, J., concurring. I join with the forward looking opinion of the Court. Today's decision will enhance the accuracy of the criminal justice system by diminishing the frequency with which juries are deprived of probative evidence due to a defendant's failure to testify for fear of prejudicial impeachment because of his prior criminal convictions. It will also serve to minimize, but unfortunately not

eradicate, the risk that a defendant who elects to testify despite his criminal record will be convicted for the wrong reasons — a result abhorrent to the very concept of justice. I am pleased at the Court's sensitivity to many of the concerns expressed in my concurrence in *State v. Johnson,* 65 *N. J.* 388, 392 (1974) (Pashman, J., concurring). Nevertheless my uneasiness over the amount of discretion vested in the trial judge by the Court prompts me to note my views on that issue separately.

The Court stresses that the logical and temporal remoteness of the prior convictions is the central criterion in the admissibility calculus. These matters should receive weighty consideration by the trial judge. However, the most critical factor is not specifically addressed. As Chief Justice Burger, writing as a circuit judge, pointed out in *Gordon v. United States,* 127 *U. S. App. D. C.* 343, 383 *F.* 2d 936 (D. C. Cir. 1967), *cert.* den. 390 *U. S.* 1029, 88 *S. Ct.* 1421, 20 *L. Ed.* 2d 287 (1968):

> One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment.
> [127 U. S. App. D. C. at 347, 383 *F.* 2d at 940–941][1]

Again, I am aware of the fact that a good deal of discretion must go into this determination. No sound judicial system would automatically permit a defendant with a string of prior convictions to appear before the jury in the same light as a first time offender on the mere representation that he will not testify if his prior record is admitted. In a given

---

[1]The Chief Justice's analysis in *Gordon* is particularly well-reasoned and commends itself to use by trial judges as a guidepost in making the delicate determinations of admissibility entrusted to their sound discretion by the Court.

case, however, a balancing of interests may require the judge to prevent cross-examination concerning a defendant's prior convictions.

The indiscriminate presentation to the jury of a laundry list of all prior convictions, which the Court permits, see ante at 144–145, would make the defendant's conviction a foregone conclusion, even if he was in fact innocent of the offense for which he was being tried. It would be preferable to admit the most serious of his prior convictions which meets the remoteness test set forth by the Court.

A helpful guide which trial judges may use in assessing remoteness is found in Rule 609(b) of the *Federal Rules of Evidence* which reads in pertinent part as follows:

> *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
>
> [*Fed. Rules. Evid.* Rule 609(b), 28 *U. S. C. Pub. L.* 93–595, § 1, 88 *Stat.* 1935 (effective January 2, 1975)]

The adoption of this Rule also postdated *Gordon, supra,* and naturally supersedes that case. The Federal Rule is not necessarily the last word on this topic. However, I believe that where the defendant has maintained an unblemished criminal record for ten consecutive years since release from confinement or other sentencing conditions of a given prior offense, the burden should shift to the State to justify the admission of evidence of such a remote conviction. Placing the burden on the State would be appropriate as it would limit the dis-

cretion of the judge and would also protect a defendant from automatically risking what is effectively a form of double jeopardy for a mistake for which he was long before held accountable by society.

In determining whether to admit evidence of prior convictions a trial judge must be mindful of one overriding consideration. He should ask himself whether admission of defendant's prior convictions for impeachment purposes will deny that defendant a trial focused only on the crime he is presently accused of committing by improperly deflecting the jury's consideration to his perceived evil character. In a close case the ever-present danger that such prejudice will result from admitting a prior conviction should tip the scales in favor of exclusion. A defendant deserves a trial on the merits, not on his past demerits. Trial judges must recognize that whatever accommodation they reach between the State's concern that a scoundrel not appear to be a trustworthy individual and the defendant's right to present relevant exculpatory evidence without being haunted by past misdeeds, the fundamental concern is that the focus of the proceedings should always remain on the crime for which the defendant is being tried. The above considerations doubtless prompted the Court to require that the lapse of time and the nature of the crime underlying the conviction must be balanced against the prejudicial effect to the defendant of admission. See *ante* at 144–145. My concurrence is intended to make these concerns more explicit.

In conclusion, I note that the new rule adopted by the Court may work well in practice, despite the rather unlimited discretion it gives the trial judges. If too many conflicting determinations arise, we are free to modify this formulation in the future to provide more explicit guidance. Subject to my comments herein, I fully concur in Justice Schreiber's opinion for the Court.

PASHMAN, J., concurring in the result.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For reversal*—None.