**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2010-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARLOS RAMON GUTIERREZ,
a/k/a CARLOS WEZ, WEZ
GUTIERREZ, and CURTIS GARY,

    Defendant-Appellant.

_____

> Submitted October 2, 2018 – Decided January 18, 2019
>
> Before Judges Fisher and Suter.
>
> On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 06-05-0486.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Adam W. Toraya, Designated Counsel, on the brief).
>
> Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (James C. Brady, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Carlos Gutierrez appeals the November 9, 2016 order that denied his petition for post-conviction relief (PCR).  We affirm.

This case arises from the fatal stabbing of Jose Riascos by defendant outside a bar where defendant was employed as a bouncer.  He was convicted by a jury in 2008 of first-degree murder, N.J.S.A. 2C:11-3(a); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).  He was sentenced to a sixty-year term of imprisonment on the first-degree murder conviction, with eighty-five percent of the term ineligible for parole[1] and a five-year period of parole supervision.  The other counts were merged into that count for sentencing.

Defendant appealed, and we affirmed his convictions and sentence in an unpublished opinion.  State v. Gutierrez, No. A-0110-08 (App. Div. Mar. 23, 2010) (Gutierrez I).  We rejected defendant's argument there that the trial court erred by not instructing the jury on aggravated manslaughter, concluding that "it was not error, let alone plain error."[2]  Id. at 16.  The Supreme Court denied defendant's petition for certification.  State v. Gutierrez, 205 N.J. 81 (2011).

---

[1] See No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant filed this PCR petition in 2011, alleging ineffective assistance of counsel. Defendant initially claimed that "[t]rial counsel failed to discuss any aspect of defendant's testimony in the event he was to testify."[3] He told the PCR court he wanted to testify to "defend" himself and to say "things just happen from . . . impulse . . . when you get caught up in the heat of the moment . . . . I wasn't like really trying to hurt anybody." His petition was denied without an evidentiary hearing and he appealed. We reversed the denial and remanded, requiring an evidentiary hearing based on defendant's contention he had informed his trial counsel he wanted to testify during his jury trial but counsel did not explain to him either the advantages or disadvantages of his proposed testimony. State v. Gutierrez, No. A-1235-13 (App. Div. Nov. 30, 2015) (Gutierrez II). We said "the record is silent about what may have or may not have transpired between defendant and his attorney on this critical question." Id. at 5. The purpose of the evidentiary hearing was to determine "to what

---

[2] We also rejected defendant's other appellate arguments that his family members were excluded during jury selection, the autopsy report was wrongly admitted in evidence and the sentence was excessive. Id. at 21-22.

[3] His PCR petition raised other issues including that trial counsel failed to suppress an arrest warrant, to advise him about the penal consequences of his sentencing exposure, to impeach the medical examiner, to investigate or offer exculpatory testimony from Diego Munoz and others and to raise issues about the jury charge. He requested an evidentiary hearing.

extent—or even whether—trial counsel and defendant discussed 'the pros and cons of testifying verses not testifying.'" Id. at 4-5. In a subsequent filing, defendant's counsel claimed that defendant did not voluntarily relinquish his right to testify and did not understand the "pros and cons" of that decision.

An evidentiary hearing was held on October 28, 2016, before a different Superior Court judge. Defendant's former trial counsel, Michael B. Campagna, who had been privately retained, testified that he explained the "pros and cons" to defendant of testifying a number of times and met with him regularly. "We had several conversations, Judge, both in the jail and in the courtroom regarding potential testimony." Campagna advised defendant against testifying particularly after the court had ruled in a Sands/Brunson[4] hearing that defendant's four prior convictions, although sanitized, could be admitted at trial if he were to testify. Campagna did not recall that defendant wanted to testify; rather, defendant was "non-committal." Also, just before defendant could have testified, Campagna recalled the State learned that defendant may have suborned perjury and that information would be brought out on cross-examination. He testified it was defendant's decision not to testify, not his, and that he could only make a recommendation to his client.

---

[4] State v. Sands, 76 N.J. 127 (1978) and State v. Brunson, 132 N.J. 377 (1993).

Defendant testified that he did not understand the term "pros and cons" at the time the trial judge used it when inquiring if his decision not to testify was voluntary, although he agreed on the record at trial that it was. He also testified he did not understand the term when Campagna used it. Defendant claimed Campagna really did not explain the benefits or detriments of testifying at trial. He wanted to testify at trial and that his counsel recommended against it. He regretted not testifying because he would have told the jury:

> I was at work, we was drinking, sniffing. We was all partying together. It wasn't like we was enemies or any of that . . . when people drink, you know, get out of hand. . . pushing and shoving . . . I thought what I was doing it was the right thing, and just things got out of hand . . . It's not like I was going to work saying . . . I'm going to go to work today and kill somebody.

At the PCR hearing defendant could not explain the inconsistency between this proposed testimony and a letter he had given to Campagna during the jury trial from Diego Munoz that indicated defendant did not commit the offense but was being set up by a group of Colombian nationals. He denied understanding his sentencing exposure, even when shown the transcript from his jury trial where it was explained to him.

The PCR court denied defendant's PCR petition on November 9, 2016. In his written decision, the PCR court found that Campagna testified credibly, and

A-2010-16T4

"answered all questions posed in a forthright and direct manner." "[H]is failures of recollection [were] not contrived, but rather [were] a consequence of the significant passage of time . . . ." The PCR court found that Campagna regularly met with defendant, that "[d]efendant was never pressing to testify, and appreciated the risks of his prior convictions to his credibility if he did testify." Defense counsel explained to defendant "that the State would likely present" evidence regarding possible witness tampering by defendant, if he chose to testify.

The court observed defendant "was intelligent and well spoken" and "confirmed much of [Campagna's] testimony." This included confirming that he "discussed the issue of his testifying 'a couple days before' the trial and again as the trial progressed." Unlike Campagna, the PCR court found defendant's testimony to be "incredible." Defendant claimed he was not properly told about his sentencing exposure, but this assertion was contradicted by the record. Defendant claimed trial counsel failed to interview or call Diego Munoz as a witness at trial. This, however, was also contradicted by the record and by defendant's strategic decision—placed on the record—to no longer call Munoz as a witness.

A-2010-16T4

The court found "it highly doubtful that [trial counsel] could have prevented [d]efendant from testifying if that is what [d]efendant wanted to do" because defendant was "reasonably sophisticated" and "no stranger to the criminal justice system." Defendant accepted the recommendation not to testify; his claim that somehow trial counsel "improperly forced" him not to testify was a manufactured argument unsupported by the record.

On appeal, defendant argues that:

> THE PCR COURT'S ORDER SHOULD BE REVERSED AND THE DEFENDANT'S CONVICTION VACATED BECAUSE TRIAL COUNSEL FAILED TO THOROUGHLY DISCUSS WITH HIS CLIENT THE POSITIVE CONSEQUENCES ASSOCIATED WITH A DECISION WHETHER OR NOT TO TESTIFY, RESULTING IN DEFENDANT'S DECISION NOT TO TESTIFY IN HIS OWN DEFENSE.

We conclude there is no merit to this argument.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668 (1984) and adopted by our Supreme Court in State v. Fritz, l05 N.J. 42 (l987). In order to prevail on an ineffective assistance of counsel claim, defendant must meet a two-prong test by establishing that: (l) counsel's performance was deficient and the errors made that were so egregious

that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Apparently conceding now that his defense counsel did discuss with him the downside of testifying—which was considerable—defendant focuses his argument on the upside, which he contends was not explained. The record, however, simply does not support this claim. Trial counsel testified he explained the "pros and cons" of testifying to defendant a number of times, both before and during the trial. He did recommend that defendant not testify but added that the decision ultimately was defendant's. The PCR court found Campagna's testimony was credible but defendant's was not. We defer to the court's credibility determination because he had the ability to hear and see the witnesses. State v. Pierre, 223 N.J. 560, 579 (2015). The court explained that its credibility findings were based not only on observations of the witnesses, but based on inconsistencies in defendant's testimony, which the court detailed. Because the court accepted the substance of Campagna's testimony and not defendant's, defendant did not prove any errors by his trial counsel's

representation and certainly none that fell outside the "wide range of professional assistance" required to show the first prong under Strickland. The PCR court was correct to reject defendant's PCR petition.

Defendant also did not prove the second requirement under Strickland that defendant was prejudiced by his attorney's performance in a way that deprived him of a fair trial. Defendant claims he wanted to testify to explain he was defending himself on the night of the murder and he was prejudiced by not testifying. The record shows, however, that the facts defendant wanted to explain were already placed on the record from other witnesses. The trial court instructed the jury on passion/provocation[5] because, as the trial court explained to defense counsel:

> I can understand your argument regarding . . . fighting, that people are engaged in mutual fighting. The evidence is that Mr. Gutierrez and Mr. Riascos may have been involved in a mutual fight and that there may be evidence that a third party was the one who inflicted the wounds.

What the trial court could not accept was how the testimony supported defendant's request for an instruction on aggravated manslaughter[6] because

---

[5]  See N.J.S.A. 2C:11-4(b)(2);  State v. Mauricio, 117 N.J. 402, 412-415 (1990).

A-2010-16T4

these same facts did not show recklessness. In our opinion from 2010 where we also rejected this claim, we said:

> the victim was stabbed six times. The victim was stabbed both in the front and in the back, the latter wounds supporting an inference that the victim was stabbed while he was in a defensive mode, or at least posing not threat to his assailant . . . . vital organs [were exposed] to injury . . . . it is evident that the wounds were inflicted forcefully since the victim's rib and heart were both cut through and his lung was pierced.
>
> [Gutierrez I, slip op. at 19-20.]

Defendant's proposed testimony would add nothing to change these facts; he is instead attempting to make a collateral attack on our prior decision that the trial court did not err on the aggravated manslaughter issue. This does not establish prejudice within the meaning of Strickland.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] A homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life. N.J.S.A. 2C:11-4(a)(1).

A-2010-16T4